[Crim. No. 3754. Second Dist., Div. Two. Feb. 7, 1944.]

THE PEOPLE, Respondent, v. PAUL LESLIE BEACH, Appellant.

William G. Kenney for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

WOOD (W. J.), J.—Defendant was charged with grand theft in each of two counts of the information. In the first count he was charged with the theft of $5,000 and in the second count he was charged with the theft of $980. He was also charged with three prior convictions. At a trial by the court without a jury he was found guilty on both counts of the information and the court also found that the charge of the first prior conviction was true. Defendant has appealed from the judgment and from the order denying his motion for a new trial.

The complaining witness, H. A. McDonald, while walking on Figueroa Street in Los Angeles at about 4:30 o'clock in the afternoon of February 28, 1943, with Margaret Ivers, found $7,000 in United States currency, consisting of seven bills each of the denomination of $1,000. He took the bills to a drug store and asked the clerk whether they were counterfeit. Upon being assured that the bills were good, McDonald went to his hotel, where Miss Ivers remained. He

later went to a drinking establishment known as the Turf Club, and was there joined by Miss Ivers. At the Turf Club he exhibited the various bills and tendered one of them to Mr. Lane, one of the proprietors, telling Mr. Lane that he had sold a car. Lane was unable to make change for the $1,000 bill but he gave McDonald $20 and a ''note'' for the $980. The bill was left with Lane. Among those at the Turf Club who saw the bills was one Gil Martin who then met McDonald for the first time. Two hours later the two men left the club together, at which time McDonald informed his new acquaintance of his find. Miss Ivers returned to the hotel. Having left Martin at the corner of Eighteenth and Figueroa Streets, McDonald went to another bar and finally arrived at his room in the Kerby Hotel, some time after midnight.

A few moments had elapsed when McDonald heard a knock at his door. He opened the door and defendant entered the room, exhibited a badge and told McDonald that he was a detective. Defendant also stated that he knew the owner of the money which McDonald had found and that he had come to get the money. He also demanded the note for $980. McDonald asked defendant to whom the money belonged but defendant said that there was $3,000 more and when the rest of the money was found he would tell who the owner was. He also said that there would be a reward and that McDonald would get his share. McDonald handed the bills to defendant.

Defendant knocked on McDonald's door at the hotel the following morning about 10 o'clock. At that time he was accompanied by his wife whom he introduced to McDonald as the daughter of the man who had lost the $7,000. She stated that her father had been held up and when defendant asked her if McDonald was the man who held up her father she stated that he was not the bandit. Defendant then said to McDonald: ''McDonald, you get your clothes on. You are going to the Turf Club with me to get the rest of this money.'' They went together to the Turf Club, where defendant stated to the proprietor that he was an officer. The proprietor of the Turf Club asked McDonald if it was all right to deliver the $1,000 bill to defendant, and upon an assurance from McDonald that it was all right, the $1,000 bill was given to defendant, who in turn repaid the $20 which had been advanced on the bill.

From the testimony of the hotel clerk it appears that defendant and Gil Martin inquired at the Kerby Hotel for McDonald late in the evening of February 28 and upon being told that McDonald had not returned defendant gave the clerk his name and telephone number and asked to be informed when McDonald arrived. After receiving a telephone message from the clerk defendant went to McDonald's room.

A number of American Express money orders in the total sum of $1,000 were purchased by defendant on March 3 from the Security First National Bank. On the same day defendant bought a Packard automobile for the sum of $1,250 and gave as part of the purchase price a $1,000 bill.

When he was arrested defendant had five $1,000 bills in his possession. He also had a large number of gasoline coupons and told the arresting officer that he was going to Cleveland to testify in a narcotic case and that he had purchased the automobile to drive to Ohio. It was shown in evidence that defendant did not have a license to operate as a detective. At one time he had applied to the police commission for a license but the commission had denied the application.

Gil Martin testified that he had met McDonald at the Turf Club and had there seen the various bills in McDonald's possession. Later in the same evening he informed defendant of the occurrence and told him that he did not know how much McDonald had but that it "looked like ten or fifteen $1,000 bills." Defendant then said, "A man with that much money his life is in danger . . . something ought to be done about it." On Monday, March 1, Martin asked defendant if he had seen McDonald and if he knew anything about the money and defendant replied, "Oh, just skip it." Defendant also told Martin that he had "dropped the whole matter." At that time Martin did not know that defendant already had the money.

Defendant now contends that the evidence is insufficient to support a conviction of the crime of grand theft. The crime of grand theft includes the crime commonly known as larceny. (Pen. Code, sec. 484.) ▉ As the finder of the lost money McDonald had the right of possession, and was entitled to retain it as against all the world except the true owner, subject to the obligation to comply with sections 1864 et seq. of the Civil Code. ▉ Any legally recognizable in-

terest is sufficient to sustain an averment of ownership in a charge of grand theft. (*People* v. *Torp*, 40 Cal.App.2d 187, 191 [104 P.2d 542].) ██ One is guilty of grand theft who with the apparent consent of the owner obtains property with the intention of stealing it and carries out his unlawful intent. (*People* v. *Knox*, 32 Cal.App. 158, 163 [162 P. 407].)

██ The evidence is clearly sufficient to support the conviction. The court could reasonably conclude that defendant, without any justification whatever, determined to steal the money which McDonald had found. He went to McDonald's room after midnight and after McDonald had been drinking heavily and by falsely making it appear that he was a detective induced him to release the money. He then used part of the money for his own benefit and made no effort to find the true owner. He avoided the witness Martin, who expected to receive some benefit from the transaction. It is difficult to see any evidence of good faith on the part of defendant. In releasing the money to defendant McDonald thought that it would be returned to the true owner and that he would receive an appropriate reward. It is argued that "the evidence supports the theory that the defendant took the property to find the lawful owner." If indeed such a view could reasonably be taken, it is sufficient answer to the contention to state that the trial court in weighing the evidence did not accept such a theory but determined the facts adversely thereto.

██ Defendant complains of the action of the trial court in proceeding with the trial after the prosecution was permitted to file an amendment to the information charging a third prior conviction without arraigning defendant thereon. The court found that the charge contained in the amendment was not true. It is apparent that defendant was not prejudiced by the action of the court.

The judgment and the order denying the motion for a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 8, 1944.