[Civ. No. 44620. First Dist., Div. Four. Aug. 17, 1979.]

JO ANN GERKIN, a Minor, etc., Plaintiff and Appellant, v.
SANTA CLARA VALLEY WATER DISTRICT et al.,
Defendants and Respondents.

## COUNSEL

Bostwick & Rowe, Everett P. Rowe and Janet Breen for Plaintiff and Appellant.

Mallen & Cabrinha, Neal A. Cabrinha, Lariviere, Dickerson & Wickler, Robert K. Wickler, Popelka, Allard McCowan & Jones, Bruce Nye, Hoge, Fenton, Jones & Appel, H. R. Lloyd and Laurie F. Faulkner for Defendants and Respondents.

## OPINION

**CHRISTIAN, J.**—Jo Ann Gerkin through her guardian ad litem, Elza Gerkin, appeals from a summary judgment in her action against Santa Clara Valley Water District and other defendants for personal injuries.

Appellant suffered personal injuries when she fell from a bridge located at Little Llagas Creek in the City of Morgan Hill. Respondents were alleged to have "operated, maintained, controlled, inspected, repaired, funded, owned and had easement rights" to that portion of Little Llagas Creek over which the bridge crossed. According to the complaint, appellant was injured as a proximate result of the conduct of respondents who had negligently permitted the bridge to remain in a dangerous condition. Respondents denied liability.

Respondents moved for summary judgment on the ground of immunity from liability provided for in Civil Code section 846.[1]

---

[1]On December 25, 1974, the date of the accident, this section provided as follows:

"An owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for fishing, hunting, camping, water sports, *hiking*, riding, including animal and all types of vehicular riding, rock collecting, or sightseeing or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in this section.

"An owner of any estate in real property who gives permission to another for entry or use for the above purposes upon the premises does not thereby (a) extend any assurance that the premises are safe for such purposes, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

"This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purposes was granted for a consideration other than the consideration, if any, paid to said

In support of the motion respondents presented excerpts from the depositions of appellant and her younger sister showing that appellant was either walking or walking with her bicycle across the two planks which constituted the bridge when she slipped and fell into a dry creek below.

In opposition to the motions, appellant submitted the declarations of herself, her mother and her sister averring that (1) on the date in question there was no telephone at the apartment where appellant was living, (2) appellant's mother gave appellant and her sister permission to cross the area in order to use the telephone at a market and to buy a candy bar there, (3) appellant's purpose in making the trip was to make a phone call and buy a candy bar, and (4) appellant walked across the bridge with her bicycle both to and from the store; at no time did she ride the bicycle.

The court granted the motions for summary judgment on the ground that appellant "was engaged in conduct specified by Civil Code Section 846" at the time of the accident and that respondents were therefore "entitled to judgment as a matter of law."

Section 846 provides that, in the absence of willful or malicious failure to guard or warn of a dangerous condition, an owner of "any estate in real property" owes no duty of care to keep the premises safe for entry by trespassers or licensees who engage in certain specified recreational activities. Included among these specified activities are "hiking" and "riding." Appellant was walking over the bridge when the accident occurred. Relying on dictionary definitions of "to hike" as "to walk or tramp" and "to go for a long walk," respondents argue that appellant's activity was encompassed within the statute and that summary judgment was therefore proper. It is contended that any test which hinges upon the user's subjective "recreational" intent would read into section 846 a requirement not stated by the Legislature and lead to "diverse, arbitrary and unjust results."

Section 846 must be construed in light of the legislative purpose behind it. ■ "It is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the law makers. Such intention controls if it can be reasonably

---

landowner by the state; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

"Nothing in this section creates a duty of care or ground of liability for injury to person or property." (Stats. 1972, ch. 1200, p. 2322; italics added.)

ascertained from the language used." (*County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [195 P.2d 17].) The purpose of section 846 was to encourage landowners to keep their property open to the public for recreational activities by limiting their liability for injuries sustained in the course of those activities. (*Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 788 [147 Cal.Rptr. 431]; *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 749 [140 Cal.Rptr. 905]; *English* v. *Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725, 731 [136 Cal.Rptr. 224].) Respondents are therefore incorrect when they contend that to walk across their property necessarily constitutes "hiking" within the meaning of the statute. Both the language and the historical background of section 846 compel the conclusion that the Legislature did not intend to immunize landowners from liability for *all* permissive or nonpermissive use of their properties, but only those uses which could justifiably be characterized as "recreational" in nature.

As originally enacted in 1963, section 846 granted property owners qualified immunity from liability for injuries connected with "taking of fish and game, camping, water sports, hiking or sightseeing." (Stats. 1963, ch. 1759, § 1, p. 3511.) The Legislature amended the statute on four subsequent occasions between 1970 and 1976 to clarify and include additional recreational uses. As the court noted in *English* v. *Marin Mun. Water Dist., supra*: "These amendments are indicative of a legislative policy to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for enumerated recreational uses." (66 Cal.App.3d at p. 731.)

In 1978, the Legislature left no doubt that the immunity provided for in section 846 was aimed exclusively at sports or recreational activities by amending the statute to limit an owner's duty of due care to render the premises safe "for any recreational purpose." (Stats. 1978, ch. 86, § 1.) "Recreational purpose" is thereafter defined as including those activities which were enumerated under the old section as well as a number of newly added ones.

Respondents' contention that "walking" falls within the scope of "hiking" under section 846 is contrary to two principles of statutory construction:

■ First, a construction which implies that words used by the Legislature were superfluous is to be avoided wherever possible. "[I]t is presumed that every word, phrase and provision employed in a statute was intended to have some meaning and to perform some useful office [citation]." (*Prager* v. *Isreal* (1940) 15 Cal.2d 89, 93 [98 P.2d 729].) If "hiking" were to be read as including the act of "walking," it would have been unnecessary for the Legislature to enumerate other types of activities which necessarily involve walking such as camping, rock collecting and hunting. Obviously, "hiking" was intended to denote more than just traveling on foot.

■ Second, a purely literal interpretation of any part of a statute will not prevail over the purpose of the legislation. (*In re Kernan* (1966) 242 Cal.App.2d 488, 491 [51 Cal.Rptr. 515]; *J. T. Jenkins Co.* v. *County of Los Angeles* (1960) 178 Cal.App.2d 379, 383-384 [2 Cal.Rptr. 852].) This principle is vividly illustrated by that portion of section 846 which, at the time of the events in question, extended a landowner's immunity to "all types of vehicular riding."[2] Read literally, the statute would preclude anyone traveling in a car from suing the owner for injuries caused by a dangerous condition on his property. It is apparent from the purpose of the enactment, however, that the Legislature was intending to reach only recreational vehicular activity such as motorcycling for pleasure or dunebuggying. (See *Parish* v. *Lloyd*, *supra*, 82 Cal.App.3d 785.)
■ Likewise, to equate the word "hiking" with mere "walking" or traveling on foot apart from any recreational context would be to ignore the legislative purpose of section 846 and, in effect, broaden the statute in a manner not contemplated by the lawmakers.

We conclude that for an activity to fall within the term "hiking" as it is used in section 846, it must be proved not merely that the user was "walking" across the property, but that the activity constituted recreational "hiking" within the commonly understood meaning of that word, i.e., to take a long walk for pleasure or exercise. (See Webster's Seventh New Collegiate Dict. (1971) p. 393.) We agree with respondents that the test should not be based on the plaintiff's state of mind. We believe, however, that such a determination must be made through a consideration of the totality of facts and circumstances, including the path taken, the length and purpose of the journey, the topography of the property in question, and the prior use of the land. While the plaintiff's subjective intent will not be controlling, it is relevant to show purpose.

---

[2]The statute now exempts "animal riding, snowmobiling, and all other types of vehicular riding, . . ." The analysis is the same under either version.

The deposition testimony submitted by respondents in support of their motion establishes that appellant was either walking or walking her bicycle across the bridge located on respondents' property at the time of the accident. There is no showing that appellant was "hiking" within the commonly understood recreational sense of the word. On the contrary, appellant and her sister crossed respondents' property because it was the shortest route between their apartment and the supermarket and was a method regularly used by residents in the area. The affidavits opposing the motion, which must be construed liberally to the end that all doubts are construed in favor of the opposing party· (*Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 719 [136 Cal.Rptr. 871]), show that appellant's purpose in crossing the land was to reach the supermarket so that she could use a public telephone and purchase a candy bar.

A triable issue of fact was raised as to whether appellant was engaged in "hiking" on the subject property such as to permit respondents to invoke the immunity of landowners set forth in section 846. It was error to grant summary judgment.

Reversed.

Caldecott, P. J., and Poché, J., concurred.