[Civ. No. 47991. First Dist., Div. Three. July 8, 1980.]

**DONALD RICHARD BLAKLEY, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.**

COUNSEL

William C. Gordon and Allan I. Shatkin for Plaintiff and Appellant.

Richard G. Rypinski, Lee Tyler, Robert J. DeFea, Donald M. Valasco and Robert R. Buell for Defendant and Respondent.

OPINION

**DEARMAN, J.**[*]—Donald Blakley, plaintiff below, appeals a judgment entered in favor of defendant and respondent State of California following an order granting the latter's motion for summary judgment. Blakley contends that a triable issue of fact exists bearing on the state's liability and that he should be allowed to proceed with his suit. We are of the opinion, however, that the state either does not own the property in question or is immunized by Civil Code section 846 and accordingly affirm the judgment of the trial court.

On April 16, 1974, plaintiff and some friends drove to the area in Hayward known as "Cactus Cliff." A cousin of one of the people in the group was visiting from Los Angeles and the purpose of the trip was to show her the view. The group drove up Hillary Street and turned onto a dirt lane (Hill Court) which led to the cliff and parked at the dead end.

After a few minutes of conversation, some of the young men walked over toward the cliff and began throwing rocks over the cacti, trying to hit a metal building below which housed the Village Church, a named defendant with whom plaintiff apparently settled. The rock throwing angered another group of adolescents who were parked in the parking lot. They soon came up to the top of the cliff and started a fight.

During the melee, plaintiff was pushed over the edge of the cliff, causing him severe and permanent injuries.

Undisputed evidence shows that Hill Court was originally proposed in a subdivision map filed by Suburban Development Company, a private developer, in 1927. In 1928, the Alameda County Board of Supervisors

*Assigned by the Chairperson of the Judicial Council.

rejected the developer's dedication of the court for public use and the lane and cul de sac remained unimproved.

At some point between then and now, the downward-sloping hill at the end of the cul de sac was quarried and abandoned, leaving a precipitous drop which is now known as Cactus Cliff.

In the mid-1960s, defendant Village Church acquired certain property bordering the land and cul de sac. Deposition testimony and declarations of James Drake, a civil engineer, and Richard Bower, a professional land surveyor, showed unequivocally that Cactus Cliff is located entirely on Village Church property. The nearest state property, which runs along one side of Hill Court to its entrance, is 60 to 80 feet from the point where plaintiff was pushed. Drake and Bower based their opinions on a search of state records, county records, and actual surveys performed at the site by a crew which Drake supervised.

To counter this evidence, plaintiff offered only the deposition testimony of Reverend Gunther, the Village Church minister, to the effect that he was under the impression that Cactus Cliff was on state property. Later in his deposition, Reverend Gunther admitted that he really could not say one way or the other who held legal title to the cliff.

Defendant State of California moved for and was granted summary judgment on these facts.

■ We are reminded that in ruling in a motion for summary judgment, the function of the trial court is to determine whether the responding party has presented any facts giving rise to a triable issue. "The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial." (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953].) ■ "Summary judgment may only be granted if no material fact issue remains in the case. Where affidavits have been submitted by the opposing parties, any doubts as to whether summary judgment is proper should be resolved against the moving party. [Citation.]" (*Buehler* v. *Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520, 526 [131 Cal.Rptr. 394, 551 P.2d 1226].)

■ Plaintiff argued below, as he does on appeal, that he tendered evidence sufficient to raise a triable issue of fact regarding ownership of

that portion of the cliff edge from which he was pushed and/or the existence of a dangerous condition on adjoining state-owned land due to the cliff's proximity. We disagree.

Government Code section 835 provides that "...a public entity is liable for injury caused by a dangerous condition of its property..." The legislative committee comment to the definitions in section 830 explains that the state's "own property may be considered dangerous if a condition on the adjacent property exposes those using the public property to a substantial risk of injury."

■ ■■ ■ Here, the evidence was clear that the state had no ownership interest in Cactus Cliff itself although we may presume that the state was and is the owner to the center line of one-half of the portion of Hill Court which borders on its property.[1] Without control of the other half of Hill Court, the state could have built a 10-foot wall around its entire parcel and not have succeeded in preventing plaintiff's injury.

Moreover, even assuming for the sake of argument that the state owned or controlled the entire Hill Court, plaintiff's cause would fail nonetheless. At the time these events occurred, Civil Code section 846 provided: "An owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for...sightseeing or to give any warning of hazardous conditions, uses of structures, or activities on such premises to persons entering for such purposes, except as provided in this section..." This defense, like all others to which a public entity would be entitled if it were a private person, is available to the state in this action. (Gov. Code, § 815, subd. (b).)

In light of section 846, it is dispositive that plaintiff himself, as well as many of his friends, testified on deposition that their sole purpose in driving up to the cliff on the night of April 16, 1974, was to look at the view. These statements were wholly uncontradicted, by inference or otherwise, and establish that plaintiff was a sightseer, to whom the state owed no duty to warn of or make safe dangerous conditions on its prop-

---

[1]Where the owner of a tract of land dedicates a street to public use, and the dedication is not accepted, the street is presumed to be of so little use to the dedicator that he or she does not retain title to it, when the adjoining land is parted with. (*Brown* v. *Bachelder* (1932) 214 Cal. 753, 756 [7 P.2d 1027].) An owner of land bounded by a road or street is presumed to own to the center of the way. (Civ. Code, § 831.)

erty. (Contrast, *Smith* v. *Scrap Disposal Corp.* (1979) 96 Cal.App.3d 525, 528 [158 Cal.Rptr. 134].)

Plaintiff argues that if the state's liability is not based on title to the cliff itself, the state is not a "landowner" within the meaning of section 846 and not entitled to immunity by its terms. However, he ignores the fact that his cause of action would be defeated in any event for, unless a dangerous condition exists on state property, the state is not liable under Government Code section 835.

Plaintiff's final argument concerns the fact that certain evidence indicates the state may at one time have erected one or more barricades to the entrance of Hill Court but allowed them to lapse into a state of disrepair by the time of plaintiff's injury. This, he claims, raises a triable issue of fact as to the state's liability for voluntary assumption of the duty to maintain a barricade at the entrance. The argument is fruitless. There is no evidence, even assuming that the state did originally block the entrance, that in doing so it assumed the duty of maintenance.

The judgment is affirmed.

White, P. J., and Scott, J., concurred.

A petition for a rehearing was denied August 7, 1980, and appellant's petition for a hearing by the Supreme Court was denied September 3, 1980.