[S.F. No. 24385. Apr. 4, 1983.]

DELTA FARMS RECLAMATION DISTRICT NO. 2028, Petitioner, v. THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent; MABEL FERNANDEZ et al., Real Parties in Interest.

700

**COUNSEL**

Memering & DeMers and Henry W. Crowle for Petitioner.

George Deukmejian, Attorney General, Michael Franchetti, Chief Deputy Attorney General, Willard Shank, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, James R. Schwartz, Dennis G. Fry and Edward P. Garson, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Lewis, Lewis & Less, Lawrence James Less and Craig R. Blackstone for Real Parties in Interest.

Peter J. Bassing and Sheeks, Oswald & Bassing as Amici Curiae on behalf of Real Parties in Interest.

**OPINION**

**KAUS, J.**—Petitioner Delta Farms Reclamation District No. 2028 (Delta) seeks mandate directing respondent superior court to sustain Delta's general demurrer to real parties' second amended complaint seeking damages for the wrongful death of two 15-year-old girls who drowned in a canal owned by the district and for personal injuries, including emotional distress.[1] Delta contends that (1) it is immune from liability for injuries resulting from the use of its canal under the provisions of Government Code section 831.8, (2) by virtue of Civil Code section 846, it was under no duty to protect against injuries or death from the recreational use of its property; (3) the cause of action for negligent infliction of emotional distress is barred by Government Code section 815, and (4) the complaint fails to state a cause of action for liability for the dangerous condition of public property under Government Code section 835.

"A demurrer admits all material and issuable facts properly pleaded." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) We set out the facts accordingly.

On June 23 or 24, 1979, Paquita Hill and Cheryl Fernandez, both 15 years of age, drowned on district property in a waterway known as Middle River. The waterway was in a dangerous condition in that it was only a foot deep for five feet from the shore, at which point, however, it plunged to a depth of sixty feet. The girls stepped off the hidden drop while wading and drowned. The district knew or should have known of the dangerous condition. It also knew that visitors frequented the area of the drownings—it had posted a sign limiting the hours of parking nearby—and knew or should have known that visitors were likely to wade or swim there. Nevertheless, it failed to warn real parties of the latent dangers of the canal. Real parties, Mary Alice Caston (Hill's mother), Mabel Fernandez (Fernandez' mother) and Karen Denise Edwards (Fernandez' sister), witnessed the drownings and suffered emotional distress; in addition, Edwards, who was pregnant at the time, suffered a miscarriage.

I

■ The district contends it is immune from liability under the provisions of subdivision (b) of Government Code section 831.8. Subdivision (a) of that section provides for immunity under specified circumstances for any public entity for injuries caused by the condition of a reservoir; nothing is said about canals. Subdivision (b), by contrast, does confer immunity for injuries suffered by per-

---

[1]The inadequacy of the district's remedy by appeal was necessarily determined by the Court of Appeal when it issued an order to show cause. (*People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 431 [155 Cal.Rptr. 704, 595 P.2d 139]; *Ingram* v. *Superior Court* (1979) 98 Cal.App.3d 483, 489-490 [159 Cal.Rptr. 557].)

sons using canals, conduits or drains; the beneficiaries of the immunity are, however, only irrigation districts, the state and their employees.[2] It is not contended that Middle River is a reservoir.

Petitioner is a reclamation district governed by the provisions of Water Code section 50000 et seq. Irrigation districts are separately classified and are governed by the provisions of Water Code section 20500 et seq. Petitioner claims that since it is authorized to acquire and maintain irrigation systems (Wat. Code, § 50910), it may invoke the immunity provisions of Government Code section 831.8, subdivision (b), regarding irrigation district canals. We do not agree. Since irrigation districts and reclamation districts have long been separately classified and regulated, we believe that the Legislature would have mentioned reclamation districts if it had intended the immunity provisions of subdivision (b) to apply to them.

If, as is contended, it had been the Legislature's intention to provide what Professor Van Alstyne calls "canal immunity" (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.46, p. 263) to public entities other than the state or irrigation districts, it could easily have said so. One simple way of expressing such an intent would have been to insert the words "or canals, conduits and drains used for the distribution of water" after the word

---

[2]Government Code section 831.8 provides: "(a) Subject to subdivisions (c) and (d), neither a public entity nor a public employee is liable under this chapter for an injury caused by the condition of a reservoir if at the time of the injury the person injured was using the property for any purpose other than that for which the public entity intended or permitted the property to be used. [¶] (b) Subject to subdivisions (c) and (d), neither an irrigation district nor an employee thereof nor the State nor a state employee is liable under this chapter for an injury caused by the condition of canals, conduits or drains used for the distribution of water if at the time of the injury the person injured was using the property for any purpose other than that for which the district or State intended it to be used. [¶] (c) Nothing in this section exonerates a public entity or a public employee from liability for injury proximately caused by a dangerous condition of property if: [¶] (1) The injured person was not guilty of a criminal offense under Article 1 (commencing with Section 552) of Chapter 12 of Title 13 of Part 1 of the Penal Code in entering on or using the property; [¶] (2) The condition created a substantial and unreasonable risk of death or serious bodily harm when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used; [¶] (3) The dangerous character of the condition was not reasonably apparent to, and would not have been anticipated by, a mature, reasonable person using the property with due care; and [¶] (4) The public entity or the public employee had actual knowledge of the condition and knew or should have known of its dangerous character a sufficient time prior to the injury to have taken measures to protect against the condition. [¶] (d) Nothing in this section exonerates a public entity or a public employee from liability for injury proximately caused by a dangerous condition of property if: [¶] (1) The person injured was less than 12 years of age; [¶] (2) The dangerous condition created a substantial and unreasonable risk of death or serious bodily harm to children under 12 years of age using the property or adjacent property with due care in a manner in which it was reasonably foreseeable that it would be used; [¶] (3) The person injured, because of his immaturity, did not discover the condition or did not appreciate its dangerous character; and [¶] (4) The public entity or the public employee had actual knowledge of the condition and knew or should have known of its dangerous character a sufficient time prior to the injury to have taken measures to protect against the condition."

"reservoir" in subdivision (a) of section 831.8. The fact that the Legislature devoted a special subdivision to canal immunity and singled out the state and irrigation districts as the protected entities, proves conclusively that the words —"neither an irrigation district . . . nor the State . . ."—of subdivision (b) must not be interpreted to mean "any public entity which owns or operates a canal."

II

The district also claims the protection of Civil Code section 846 (section 846) which limits the duty of care owed by "an owner of any estate or any other interest in real property" to persons using the property for designated recreational purposes.[3]

Section 846 itself, which only speaks of "owners," offers little guidance on the question whether the Legislature meant to include public entities in that term.[4] On the other hand, the legislative history of section 846, when considered

---

[3]Section 846 now provides: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section. [¶] A 'recreational purpose,' as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picknicking, nature study, nature contacting, recreational gardening, gleaning, winter sports, and viewing or enjoying historical, achaeological, scenic, natural, or scientific sites. [¶] An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section. [¶] This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner. [¶] Nothing in this section creates a duty of care or ground of liability for injury to person or property."

[4]The dissent argues that the "owners" to whom section 846 applies include the state and other public entities such as the petitioning district. It relies, inter alia, on section 669 of the Civil Code which since 1872 has read in relevant part: "All property has an owner, whether that owner is the State, and the property public, or the owner an individual, and the property private." The section—which, incidentally, applies to personal as well as real property—merely recognized that in law there is no such thing as unowned property. As such it complements section 182 of the Government Code: "All property within the limits of the State, which does not belong to any person, belongs to the people. Whenever the title to any property fails for want of heirs or next of kin, it reverts to the people."

It is, of course, impossible to quarrel with the proposition that the state can be an owner of property, but that is only the beginning of the problem in statutory interpretation which this case

in conjunction with other matters then before the Legislature, leaves no doubt that public entity liability was then very much on the mind of the Legislature and that, had it intended to bring such entities under the umbrella of section 846, it would have said so.

The legislative history of section 846 (Stats. 1963, ch. 1759, § 1) shows that it was considered by the same committees of the Assembly and the Senate which, concurrently, readied the California Torts Claims Act (the Act) (Stats. 1963, ch. 1681) for consideration by the full Legislature.[5] Although section 846 became law two days after the Act, on occasion it led the latter on their joint journey through the two houses—for example, the Senate finished its work on section 846 on June 14, while it did not concur in Assembly amendments to the Act until five days later. We mention these legislative minutiae for a reason: the simultaneous passage of the two pieces of legislation through the same two committees and, later, both houses of the Legislature, makes it particularly appropriate that the two statutes—which, to some extent, deal with the same problem—be construed in such a way that they produce harmony rather than dissonance. (*Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590-591 [116 Cal.Rptr. 376, 526 P.2d 528].) To be specific: both statutes deal with liability to recreational users of property—section 846 does so exclusively, the Act in part. The rule of construction just adverted to commands us to avoid any interpretation of section 846 which is at odds with the provisions of the Act as far as injuries to recreational users of public property are concerned.

---

poses. Obviously the power of the state to own property cannot automatically lead to the conclusion that every statutory reference to an "owner" encompasses not only the state itself, but also—as relevant to this case—every public entity within the state. If that were the law, there would be no need for the rule that "[w]here a statute is not expressly made applicable to government, it is for the courts to determine whether the Legislature intended it to apply to government." (*People* v. *Centr-O-Mart* (1950) 34 Cal.2d 702, 704 [214 P.2d 378].)

[5](*Stats. 1963, ch. 1681, § 1, p. 3267* (the Act).)
"Jan. 10—Read first time. To printer. From printer. *To committee. [Judiciary.]*
Feb. 26—From committee with author's amendments. Read second time. Amended. Re-referred to committee.
Mar. 12—From committee with author's amendments. Read second time. Amended. Re-referred to committee.
Mar. 18—From committee: Amend and re-refer to committee.
Mar. 19—Read second time. Amended. To print, and re-referred to committee.
April 2—From committee: Do pass as amended, but first amend, and re-refer to Com. on Fin.
April 3—Read second time. Amended. To print, and re-referred to Com. on Fin.
April 18—From committee: Do pass as amended.
April 22—Read second time. Amended. To print, engrossment, and third reading.
April 23—Reported correctly engrossed. Passed on file.
April 24—Passed on file.
April 25—Read third time, passed, title approved. *To Assembly.*
April 26—In Assembly. Read first time. Held at desk.
April 30—Referred *to Com. on Jud.*
May 16—From committee: Do pass as amended.
May 17—Read second time. Amended. To printer. From printer. Ordered returned to second reading file.

Actually, an unbiased reading of section 846 and the relevant sections of the Act—principally sections 831.2, 831.4, 831.8 and 835 of the Government Code[6]—gives little reason to suppose that section 846 was ever intended to upset the carefully structured, comprehensive, statutory framework of the Act by including public entities among the landowners whom it protects: First, section 846 preserves the then prevailing distinction between trespassers, licensees and invitees—concepts which are foreign to the Act (*Gibson* v. *County of Mendocino* (1940) 16 Cal.2d 80, 84-85 [105 P.2d 105]; see also *O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729, 749, fn. 12 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1]; *Acosta* v. *County of Los Angeles* (1961) 56 Cal.2d 208, 212-213 [14 Cal.Rptr. 433, 363 P.2d 473, 88 A.L.R.2d 1417]; *Gallipo* v. *City of Long Beach* (1958) 164 Cal.App.2d 70, 76 [304 P.2d 106]; Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) § 6.22, p. 205). Second, as we shall presently show, application of section 846 to public entities would eviscerate large portions of the Act. Third, application of section 846 to public entities would lead to some patently absurd results. One example will suffice at this point: since section 846 is by no means limited to land in its natural condition—it specifically mentions "structures"—it obviously encom-

---

May 20—Read second time. Re-referred to Com. on W. & M.

June 14—From committee: Do pass as amended.

June 15—Read second time. Amended. To printer. From printer. Ordered returned to second reading file.

June 17—Read second time. To third reading.

June 18—Read third time, passed, title approved. To Senate.

June 18—In Senate. To unfinished business.

June 19—Senate concurs in Assembly amendment. To enrollment.

July 1—Reported correctly enrolled. To Governor at 4:30 p.m.

July 15—Approved by Governor. Chapter 1681."

(*Stats. 1963, ch. 1759, § 1, p. 3511* (section 846).)

"Feb. 7—Read first time. To printer. From printer. *To committee.* [*Judiciary.*]

May 6—From committee: Do pass.

May 7—Read second time, to engrossment and third reading.

May 8—Reported correctly engrossed. Read third time, passed, title approved. *To Assembly.*

May 9—In Assembly. Read first time. Held at desk.

May 10—*Referred to Com. on Jud.*

May 23—From committee: Do pass as amended. To Consent Calendar.

May 24—Read second time. Amended. To printer. From printer. Ordered returned to second reading file.

May 27—Read second time. To Consent Calendar.

May 29—Read third time, passed, title approved. To Senate.

May 29—In Senate. To unfinished business.

June 3—Senate refuses to concur in Assembly amendments. In conference.

June 14—Senate adopts conference report.

June 21—Assembly adopts conference report. To enrollment.

July 3—Reported correctly enrolled. To Governor at 11 a.m.

July 17—Approved by Governor. Chapter 1759."

(Data taken from Cal. Leg., Final Calendar of Legislative Business (1963 Reg. Sess.), italics added.)

[6]Except for section 846, which is in the Civil Code, all statutory references are, unless otherwise noted, to the Government Code.

passes improved streets. So, of course, does the Act. (§ 830 et seq.) Therefore, an improved but dangerously rutted street would expose a city to liability to a bicyclist who commutes to work, even though it was under "no duty" to keep the same street safe for the recreational rider right behind him.[7] We doubt that there is a single city attorney in this state who would submit such an absurdity to a court of law.

Thus, although it should have been clear from the outset that the Act and section 846 dealt with different sets of potential defendants—the former with public entities and officers, the latter with private landowners—the Courts of Appeal temporarily backed themselves into a holding that section 846 did benefit public as well as private landowners. The error is easily traceable to *English* v. *Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725 [136 Cal.Rptr. 224] where the court—without stopping to consider that one of the two defendants was a public entity—applied section 846 against a plaintiff who, during a recreational ride, drove his motorcycle over a hidden precipice. The only legal issue discussed was the impact of *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] on section 846. Next, *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022 [157 Cal.Rptr. 612] assumed by dictum that section 846 applied to the defendant public entity, but nevertheless reversed a summary judgment against the plaintiff, holding that she may not have used the particular property for recreational purposes—"walking" is not necessarily "hiking." Then came *Moore* v. *City of Torrance* (1979) 101 Cal.App.3d 66 [166 Cal.Rptr. 192] which said that *English* "clearly refuted" the argument that section 846 did not apply to publicly owned property—overlooking that the *English* court never adverted to the possibility of a distinction between private and public property.[8]

In sum, the precedential authority for applying section 846 to public entities rests solidly on a case which never considered the point—*English*. Actually, the first case which thoroughly canvassed the issue—*Nelsen* v. *City of Gridley* (1980) 113 Cal.App.3d 87 [169 Cal.Rptr. 757]—came to precisely the opposite conclusion: section 846 did not apply to public entities because it was irreconcilable with the provisions of the California Tort Claims Act. A brief analysis of section 846 and the relevant Government Code provisions proves that *Nelsen* is irrefutably correct and that the *English-Gerkin-Moore* line of cases must be disapproved.

The purpose of section 846 is to encourage property owners "to allow the general public to recreate free of charge on *privately* owned property." (*Parish*

---

[7] In what category would one put the commuter who, solely for exercise, pedals home by a circuitous route?

[8] There is also a dictum in *Blakley* v. *State of California* (1980) 108 Cal.App.3d 971 [167 Cal.Rptr. 1] to the effect that even if the defendant state had owned the top of a cliff—which it did not—it would not be liable to a plaintiff who had engaged in the recreational activity of fighting before he was pushed over the edge.

v. *Lloyd* (1978) 82 Cal.App.3d 785, 787 [147 Cal.Rptr. 431]; italics added; see also *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 747 [140 Cal.Rptr. 905].) This purpose is achieved by a basic declaration that owners owe "no duty of care to keep the premises safe" for certain specific recreational purposes. Broadly speaking the only exceptions relate to (a) victims of wilful or malicious conduct by the owner, (b) persons who have paid consideration for permission to enter, and (c) express invitees. We note again that the statute makes no distinction between natural and artificial conditions.

The Act evinces a similar purpose to encourage public entities to open their properties for recreational use by providing for certain immunities. It goes about it, however, in radically different fashion.

The basic rule of liability for dangerous and defective public property, stated in section 835, is preceded by several immunities, some of which relate exclusively—or nearly so—to recreational activities. Thus section 831.2 declares that a public entity is not liable "for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." The Legislative Committee comment states in part: "It is desirable to permit the members of the public to use public property in its natural condition and to provide *trails for hikers and riders and roads for campers* . . . . But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use." (Italics added.) Obviously, this comment would make little sense if the public entity were already protected from claims by hikers, riders and campers by virtue of section 846.

That the Legislature did not believe that public entities were under no duty to recreational users is even more obvious if we examine section 831.4 which provides an immunity for injuries caused by unpaved roads and trails which furnish access to "fishing, hunting, camping, hiking, riding . . . water sports, recreational or scenic areas . . . ."[9] The comment indicates that the purpose of the immunity is the same as that provided by section 831.2—opening up public property for recreational use by making it financially safe to do so.

---

[9]Section 831.4 reads as follows: "A public entity, public employee, or a grantor of a public easement to a public entity for any of the following purposes, is not liable for an injury caused by a condition of: [¶] (a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas and which is not a (1) city street or highway or (2) county, state or federal highway or (3) public street or highway of a joint highway district, boulevard district, bridge and highway district or similar district formed for the improvement or building of public streets or highways. [¶] (b) Any trail used for the above purposes. [¶] (c) Any paved trail, walkway, path, or sidewalk on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property, so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of any condition of the paved trail,

The important aspect of section 831.4 is, however, that it provides a very limited immunity against the claims of the fishermen, hunters, campers, hikers and riders: if the road which leads to the recreational area is paved or happens to be a city street—though unpaved—the immunity does not apply and liability to hunters, campers et al. is clearly recognized. This result simply cannot be reconciled with section 846.

Even more compelling is an analysis of section 831.8 (see fn. 2, *ante*). Subdivision (a) of that section immunizes entities from liability for the dangerous condition of reservoirs which are not used for the purpose which the agency intended or permitted. Clearly this immunity applies principally to water sports. (E.g., *Cardenas* v. *Turlock Irrigation Dist.* (1968) 267 Cal.App.2d 352 [73 Cal.Rptr. 69]; *Hibbs* v. *Los Angeles County Flood Control Dist.* (1967) 252 Cal.App.2d 166 [60 Cal.Rptr. 364].) It is, however, subject to several exceptions stated in subdivisions (c) and (d). Subdivision (c), in essence, negates the immunity if the injured person is not guilty of criminal trespass and is victimized by a "trap" known to the entity. Subdivision (d) creates an exception in the nature of the attractive nuisance doctrine, provided the victim is less than 12 years old.

Subdivisions (c) and (d) thus amount to an express imposition of public entity liability for activities which, in their nature, are almost exclusively recreational. It is simply inconceivable that the Legislature could intend such liability to coexist with a statute, such as section 846, which negates it.

Petitioner also relies on section 815 which provides in relevant part that "except as otherwise provided by statute" liabilities of entities established by the Act are "subject to any immunity . . . provided by statute . . . and . . . subject to any defenses that would be available to the public entity if it were a private person." Petitioner claims, of course, that section 846 is such an immunity or defense.

We disagree with petitioner's conclusion, for the Act does "otherwise provide." Sections 831.2, 831.4 and 831.8 are clear and express recognition that the fact that the injured party is using public property for a recreational purpose is immaterial and that where liability attaches in favor of a nonrecreational user, it will also attach in favor of the hunter, hiker, swimmer, camper and so on. These three sections, therefore, negative the applicability of section 846 to public entities.

---

walkway, path, or sidewalk which constitutes a hazard to health or safety. Warnings required by this subdivision shall only be required where pathways are paved, and such requirement shall not be construed to be a standard of care for any unpaved pathways or roads."

In view of the conclusion we have just reached, we need not consider real parties' further argument that section 846 does not provide for an immunity or defense as demanded by section 815, but—more directly—negatives any duty.

Finally, we are urged to construe section 846 in accord with *Moore* v. *City of Torrance, supra,* because, after that decision, section 846 was amended in 1980 and the Legislature failed to avail itself of the opportunity to disavow *Moore.* (*Alter* v. *Michael* (1966) 64 Cal.2d 480, 482-483 [50 Cal.Rptr. 553, 413 P.2d 153].)

Whatever force the rule relied on by petitioner may have generally as an aid to statutory construction was neutralized in this instance by the wealth of cases which had, as a matter of course, dealt with recreational injuries and deaths in the context of the Act.[10] While most of these cases ended unfavorably to the respective plaintiffs, at least one—*Buchanan* v. *City of Newport Beach, supra,*—held that the defendant city could be held liable for injuries to a surfer. If legislative reaction to appellate decisions is really as sensitive as petitioner suggests, at least one of the four amendments to section 846 which followed *Buchanan* (Stats. 1976, ch. 1303, § 1; Stats. 1978, ch. 86, § 1; Stats. 1979, ch. 150, § 1; Stats. 1980, ch. 408, § 1) should have made explicit what is contended to be implicit: that public entities are protected by section 846. We hold that they are not.

### III

■ The district further contends that recovery for negligent infliction of emotional distress suffered by relatives who witnessed the drownings is not provided by statute and is therefore barred by section 815.[11] We disagree.

Section 835 imposes liability for a "dangerous condition [which] created a reasonably foreseeable risk of the kind of injury which was incurred . . . ." The term "injury" is defined in section 810.8 as meaning "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that

---

[10]All of the following decisions were decided before the last amendment to section 846 in 1980: *Cardenas* v. *Turlock Irrigation Dist.* (1968) 267 Cal.App.2d 352 [73 Cal.Rptr. 69] (swimming); *Rendak* v. *State of California* (1971) 18 Cal.App.3d 286 [95 Cal.Rptr. 665] (hiking); *Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221 [123 Cal.Rptr. 338] (surfing); *Osgood* v. *County of Shasta* (1975) 50 Cal.App.3d 586 [123 Cal.Rptr. 442] (water skiing); *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926 [125 Cal.Rptr. 586] (diving); *County of Sacramento* v. *Superior Court (Kuhn)* (1979) 89 Cal.App.3d 215 [152 Cal.Rptr. 391] (floating).)

[11]Section 815 provides in pertinent part: "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

it would be actionable if inflicted by a private person." A "dangerous condition" is defined in section 830 as meaning a "condition of property that creates a substantial . . . risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." The Law Revision comment to section 830 makes it clear that the injury resulting from a dangerous condition may be an emotional one: "The definition of 'dangerous condition' is quite broad because it incorporates the broad definition of 'injury' contained in Section 810.8. Thus the danger involved need not be a danger of physical injury; it may be a danger of injury to intangible interests so long as the injury is of a kind that the law would redress if it were inflicted by a private person." (32 West's Ann. Gov. Code (1980 ed.) p. 265.)

Under these provisions, an injury to "feelings" is compensable if it "is of the kind that the law would redress if it were inflicted by a private person." This imports a common law meaning into the statute which would include emotional distress.

Emotional distress is a compensable injury when inflicted by a private person if the risk of such harm to plaintiff was reasonably foreseeable to defendant. (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 923 [167 Cal. Rptr. 831, 616 P.2d 813]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal. Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) This test of liability dovetails with the requirement of section 835 that the "dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred."

Real parties have alleged such a foreseeable risk. It is predictable that adult relatives would accompany children who are wading in the canal and that they would suffer emotional distress from watching them drown. Section 835 encompasses that type of injury.

## IV

■ The district's final contention is that the complaint fails to state a cause of action for liability under section 835 for the dangerous condition of public property. That section establishes alternate grounds of liability for injuries caused by a dangerous condition where the public entity either (a) wrongfully or negligently created the dangerous condition, or (2) had actual or constructive notice of a dangerous condition on its property and failed to take measures to protect against it. Real parties rely on the second ground of liability.

The district claims the complaint does not state a cause of action on this ground because the allegations of notice are inadequate. Section 835.2 sets forth what must be established for a public entity to be charged with notice of a

dangerous condition: (a) actual notice is established if the public entity "had actual knowledge of the existence of the condition and knew or should have known of its dangerous character," (b) constructive notice is shown "if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."

The complaint alleges that the district "knew or should have known of the dangerous condition of the waterway known as Middle River." The district argues the allegation is inadequate because it does not set forth any underlying facts regarding knowledge. The point is well taken as to constructive notice, which clearly requires a more detailed statement of facts than that alleged here. As to actual knowledge, however, a general allegation is sufficient. (See *Matthews* v. *State of California* ex rel. *Dept. of Transportation* (1978) 82 Cal.App. 3d 116 [145 Cal.Rptr. 443]; *Osborn* v. *City of Whittier* (1951) 103 Cal.App. 2d 609 [230 P.2d 132]; *Allen* v. *City of Los Angeles* (1941) 43 Cal.App.2d 65 [110 P.2d 75]; Van Alstyne, Cal. Government Tort Liability Practice (Cont. Ed.Bar 1980) § 3.72, p. 294.) The pleading of actual notice is sufficient to withstand the district's general demurrer. (See *Hitson* v. *Dwyer* (1943) 62 Cal.App.2d 803 [143 P.2d 952].)

The petition for writ of mandate is denied and the order to show cause is discharged.

Bird, C. J., Mosk, J., Broussard, J., and Lally, J.,* concurred.

**RICHARDSON, J.**—I respectfully dissent.

The majority holds that reclamation districts such as petitioner are unprotected under any circumstances by either of the separate tort immunities contained in Government Code section 831.8, subdivision (b), and Civil Code section 846. In my view, assuming that petitioner otherwise meets the conditions specified in those sections, it is immune from tort liability in this case.

1. *Government Code Section 831.8, Subdivision (b)*

This section provides that, subject to certain exceptions specified in subdivisions (c) and (d), "neither *an irrigation district* nor an employee thereof nor the State nor a state employee is liable under this chapter for an injury caused by the condition of canals, conduits or drains used for the distribution of water if at the time of the injury the person injured was using the property for any purpose other than that for which the district or State intended it to be used." (Italics added.)

*Assigned by the Chairperson of the Judicial Council.

The majority, without extended analysis, holds that because petitioner is a "reclamation district" organized under Water Code section 50000 et seq. rather than an "irrigation district" organized under Water Code section 20500 et seq., it may not invoke the foregoing immunity. The issue is not so simple. Professor Arvo Van Alstyne, a noted authority on government tort liability who assisted in drafting the Tort Claims Act, cogently observes that "*The meaning of the statutory term 'irrigation district,' as used in § 831.8(b), is not entirely clear.* Many irrigation districts, to be sure, exist pursuant to and are governed by the Irrigation District Law. Wat C §§ 20500-29978. These districts are unquestionably covered by § 831.8(b). *But there are also many districts formed for irrigation purposes that are governed by other statutory provisions and may not bear the technical title of 'irrigation districts' although for most practical purposes they are indistinguishable.* See, *e.g.,* California Water District Law (Wat C §§ 34000-38501). In addition, numerous water districts of various kinds maintain and operate canals and conduits for distribution of water for both irrigation and nonirrigation purposes. See, *e.g.,* County Waterworks District Law (Wat C § 55330). In *Hibbs* v. *Los Angeles County Flood Control Dist.* (1967) 252 CA2d 166, 60 CR 364, Govt C § 831.8 was cited as relevant to the liability of a *flood control district* for the drowning of a seven-year-old boy in an unfenced flood channel running through a residential area. The section's relevance, in the court's opinion, lay in the obvious legislative intent, as shown by subdivisions (c) and (d) of Govt C § 831.8, to require governmental entities maintaining water conduits and 'drains' to take suitable precautions against injury to children foreseeably playing in the vicinity." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.46, p. 263, italics added.)

While it is true that "reclamation districts" and "irrigation districts" are governed by separate statutory provisions, nevertheless we have insisted that "they are organized for the same general purposes to accomplish similar objects. *There is no essential difference in these respects between an irrigation district and a reclamation district . . . .* Irrigation districts are organized to reclaim land by supplying water thereto." (*Lindsay-Strathmore I. Dist.* v. *Superior Ct.* (1920) 182 Cal. 315, 335-336 [187 P. 1056].) We have also observed that "Reclamation includes irrigation in its general, ordinary sense and . . . the term is quite generally applied to the reclaiming of arid lands as well as the shutting out of overflow waters. The primary purpose in each case is to regulate or control waters to the extent that lands may be brought into a state suitable for cultivation." (*Hershey* v. *Reclamation District No. 108* (1927) 200 Cal. 550, 568 [254 P. 542].)

Indeed, the Legislature itself in statutes governing reclamation districts has defined "reclamation works" as "such public works and equipment as are necessary for the unwatering, watering, *or irrigation* of district lands and other

district operations." (Wat. Code, § 50013, italics added.) In similar fashion, the Legislature has specifically empowered a reclamation district to maintain and operate "any irrigation system through which any lands in the district and lands contiguous thereto may be supplied with water for irrigation . . . ." (*Id.*, § 50910.)

It seems to me reasonable to conclude that in drafting section 831.8, subdivision (b), of the Government Code, the Legislature used the term "irrigation" in its broad, generic sense. It is a fair assumption that the Legislature intended that the statutory immunity extend to *any* districts which are formed for irrigation purposes and which use canals, conduits or drains to accomplish those purposes. Certainly, there is nothing in the legislative history of the section which suggests that the Legislature intended to single out for immunity only those irrigation districts which were formally organized under section 20500 et seq. of the Water Code. Such a narrow grant of immunity appears wholly arbitrary and capricious. The majority fails to suggest any basis for fairly distinguishing between the districts in terms of either their purposes or functions.

I do not suggest that petitioner is necessarily entitled to immunity under section 831.8 under the facts of this case. Real parties' complaint may have pleaded sufficient facts to invoke the exception to immunity contained in subdivision (c) of that section, an issue which the majority does not elect to reach.

2. *Civil Code Section 846*

Section 846, in relevant part, provides that "An owner of . . . real property . . . owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose . . .," except as provided in the section. "Recreational purpose" is defined to include a variety of sports and outdoor activities specified in the section, including "water sports." The foregoing limitation of liability does not apply to wilful or malicious failure to guard or warn against dangerous conditions, or to injuries to invitees or to permitees who have paid some consideration to enter the premises.

Does section 846 shield public entities as well as private landowners? Several appellate cases have so suggested. (*Moore* v. *City of Torrance* (1979) 101 Cal.App.3d 66, 72 [166 Cal.Rptr. 192]; *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1026 [157 Cal.Rptr. 612]; *English* v. *Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725, 728 [136 Cal.Rptr. 224]; but see *Nelsen* v. *City of Gridley* (1980) 113 Cal.App.3d 87, 91-97 [169 Cal.Rptr. 757].) Although the *Moore, Gerkin* and *English* cases do not explicitly set forth their rationale for applying section 846 to public owners, the reason is quite simple: the term "owner" under *every* section of the Civil Code dealing with the ownership of property includes private *and public* owners.

It is significant that section 846 is contained in a chapter of the Civil Code entitled "Obligations of *Owners.*" (Italics added.) Not surprisingly, preceding sections of the Civil Code define "ownership" and "owner" as those terms are used throughout the code. "Ownership" is "the right of one or more persons to possess and use" property. (§ 654.) As to the term "owner," section 669 provides as follows: "*Owner.* All property has an owner, *whether that owner is the State, and the property public,* or the owner an individual, and the property private. The State may also hold property as a private proprietor." (Italics added.) Subsequent provisions, such as section 846, set forth the rights and obligations of an "owner" of property. It thus seems abundantly clear to me that "owner," as that term is used in section 846, includes both private and public owners.

The majority relies primarily upon the existence of various statutory immunities contained in the Government Code (see §§ 831.2, 831.4, 831.8) which afford to public entities protection similar to that offered by Civil Code section 846. Unlike section 846, however, none of these Government Code provisions is specifically and exclusively directed to the subject of landowner liability to persons using the property for recreational purposes. In short, each of these Government Code immunities includes injuries resulting from *nonrecreational* uses. Only Civil Code section 846 treats the subject of recreational use which is the specific problem before us.

Thus, contrary to the majority's primary thesis, the limited liability afforded by Civil Code section 846 is not inconsistent with the immunities extended in the Government Code. In the present case, decedents drowned while wading in petitioner's canal. Wading constitutes a "recreational" use of the canal under section 846, which includes "water sports" among its list of "recreational purposes." (See *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App. 3d 737, 747 [140 Cal.Rptr. 905] [diving].) Real parties failed to allege any wilful or malicious conduct by petitioner, or any other facts which might remove the protection afforded petitioner by that section. Accordingly, whether or not petitioner is also entitled to the immunity extended by section 831.8, subdivision (b), of the Government Code for "irrigation districts" (as previously discussed), petitioner clearly is protected as an "owner" by the provisions of Civil Code section 846.

In my view, it is wholly anomalous to construe section 846 as extending to private landowners *greater* protection than that afforded to the sovereign state or its political subdivisions. Indeed, the Tort Claims Act itself explicitly forbids such discrimination, providing that "The liability of a public entity . . . is subject to *any defenses* that would be available to the public entity *if it were a private person.*" (Gov. Code, § 815, subd. (b), italics added.) It seems to me

unquestionable that, were petitioner a private party, it would be shielded by the limited liability specified in Civil Code section 846.

I would grant a writ of mandate directing respondent court to sustain petitioner's general demurrer.

Marler, J.,* concurred.

Petitioner's application for a rehearing was denied May 26, 1983. Richardson, J., was of the opinion that the application should be granted.

---

*Assigned by the Chairperson of the Judicial Council.