Jeffery J. JERZ, Plaintiff and Appellant,

v.

SALT LAKE COUNTY, a political subdivision of the State of Utah, Defendant and Appellee.

No. 890366.

Supreme Court of Utah.

Dec. 6, 1991.

Matt Biljanic, Midvale, for plaintiff and appellant.

David E. Yocom, Jay Stone, Salt Lake City, for defendant and appellee.

HOWE, Associate Chief Justice:

Plaintiff Jeffery J. Jerz appeals from a summary judgment entered in favor of defendant Salt Lake County. He contends that the trial court erred in holding that the Limitation of Landowner Liability–Public Recreation Act ("the Act"), Utah Code Ann. §§ 57–14–1 to –7, barred his complaint.

On August 18, 1987, plaintiff and his brother were driving in Butterfield Canyon in Salt Lake County on their way to the Kennecott lookout. This lookout offers a view of the Bingham Copper Mine, one of the world's largest open-pit copper mines. The road is a narrow public road which is listed on the county road system and traverses the Oquirrh Mountains between Tooele and Salt Lake Counties. It also leads to recreation areas for hunting and camping.

The Jerz vehicle struck a large rock protruding from the surface of the road. The

vehicle veered off the road into the canyon, causing severe personal injury to Jerz. He brought this action against Salt Lake County, alleging negligent maintenance of the road. The County asserted the affirmative defense that plaintiff's action was barred by the Act. The County contended that (1) the road was protected under the Act; and (2) Jerz was sightseeing at the time of the accident, which is a recreational use of the road. The trial court agreed with the County and entered summary judgment in its favor.

The trial court's conclusion that the Act barred plaintiff's complaint is a legal conclusion which we review for correctness. *Landes v. Capital City Bank*, 795 P.2d 1127, 1129 (Utah 1990). Moreover, an issue of statutory interpretation is one of law, and this court is free to draw its own conclusions regarding it. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1038 (Utah 1989).

We are confronted with a two-part inquiry: (1) whether the legislature intended public roads of the type in Butterfield Canyon to be within the purview of the Act; and (2) if so, whether plaintiff was engaged in "recreational activity" as required by the Act.

Utah Code Ann. § 57–14–2(1) defines what land falls within the protection of the Act. " 'Land' means any land within the territorial limits of the state of Utah and includes *roads*, water, water courses, private ways and buildings, structures, and machinery or equipment when attached to the realty." (Emphasis added.) "Owner" is defined as "the possessor of any interest in the land, whether public or private land, a tenant, a lessee, and an occupant or person in control of the premises." Section 57–14–2(2). Substantively, the Act provides, with two exceptions, that "an owner of land owes no duty of care to keep the premises safe for entry or use" by a person using them "for any recreational purpose, or to give any warning of a dangerous condition, use, structure, or activity on the premises to those persons." Section 57–14–3.

## I. PURPOSE OF THE ACT IS NOT SUBSERVED

■ In determining what type of road is intended to be covered by the Act, we first turn to section 57–14–1, which sets out the legislative purpose of the Act: "The purpose of this act is to encourage public and private owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for those purposes." In this court's first opinion dealing with the Act, we held that "landowners who have not made their property available to at least some members of the general public for recreational purposes may not invoke the protection of the act." *Crawford v. Tilley*, 780 P.2d 1248, 1251 (Utah 1989). We reaffirmed that holding in our recent decision in *Golding v. Ashley Central Irrigation Co.*, 793 P.2d 897 (Utah 1990).

An affidavit of the director of the division of highways for Salt Lake County states that "canyon roads ... are classified according to the level of maintenance the county performs on the road. The classification is established by written policy in accordance with ordinances adopted by the board of county commissioners." *Canyon Road Maintenance and Classification*, found in chapter 14.28.010 of Salt Lake County Code of Ordinances, states, "The purpose of this chapter is to identify the canyon roads for which the county has maintenance responsibility and to classify the roads for the level of maintenance to be performed." Ord. 890 § 1(part) (1984). The road in Butterfield Canyon is specifically listed in chapter 14.28.020. Each road is rated on a scale from "1" to "6"; a road rated "1" receives the most maintenance. The Butterfield Canyon road is rated "6," signifying the least maintenance. The fact that the road is listed on the county road system and is maintained by the County, even though it receives only minimal maintenance, is significant.

If the purpose of the Act is to be subserved, it would seem that in order for a road to come within the protection of the Act, it should be capable of being closed to

public use at any time. This conclusion follows from the Act's purpose, to encourage owners of land to open land (roads) for public recreation use. The County does not contend that it could permanently close the road in Butterfield Canyon to public use without following the statutory procedure for abandoning public roads generally. *See* Utah Code Ann. § 17–5–38(1). It therefore appears that since it is on the county road system and is maintained by the County, the Butterfield Canyon road is not characteristic of the type of road which was intended to be protected under the Act.

## II. 1987 AMENDMENTS TO THE ACT

The above conclusion is borne out by the 1987 amendments to the Act. Prior to 1987, the Act dealt only with owners of private land and afforded no protection to owners of public land. In that year, the legislature enacted a comprehensive Off–Highway Vehicle Registration Act. 1987 Utah Laws 162. Chapter 162 provided for the registration, titling, and licensing of off-highway vehicles; established safety and equipment standards for them; designated where they may be operated; and restricted their use on public and private lands. Significantly, in section 41–22–10.1 of that chapter, operation of off-highway vehicles was authorized on public lands, streets, or highways which had been "posted by sign or designated by map by the controlling federal, state, county or city agency as open to off-highway vehicle use." Additionally, it was there provided, "No liability may be imposed on any federal, state, county, or city relating to the designation or maintenance of any trail, street, or highway open for off-highway vehicle use."

■ Also in chapter 162, three amendments were made to the Limitation of Landowner Liability Act. The legislative purpose in section 57–14–1 was expanded to encourage owners of both private and public land to open their lands for recreational purposes. The definition of "owner" was amended to include owners of both private and public land. Section 57–14–2(2). The definition of "recreational pur-

pose" was expanded to include "using off-highway vehicles." Section 57–14–2(3). These three amendments, being made in legislation dealing with off-highway vehicle registration and use, can reasonably be construed to be primarily intended to afford limitation of liability to public entities which open certain designated trails, streets, and highways for off-highway vehicle use. It would be unreasonable to give the amendments so broad an interpretation as to afford immunity to a public entity against a user of a road on the public road system like Jerz who travels in an on-highway vehicle to a recreational area.

## III. REJECT "LEADING TO RECREATION" AS THE TEST

■ The County contends, however, that the protection of the Act extends to roads leading to and from recreation land. It points out that plaintiff was going to the Kennecott lookout for sightseeing at the time of the accident, which activity is defined as a "recreational purpose" in section 57–14–2(3). We cannot accommodate such a broad interpretation of the Act. If defendant's interpretation is to be followed, then public roads through all canyons in this state, many of which lead to recreation areas, would be protected under the Act. We find persuasive *Smith v. Southern Pacific Transportation Co.*, 467 So.2d 70 (La. Ct.App.1985), which holds that when a public road can be used for nonrecreational purposes, it loses the protection of a recreational use act:

> [A]lthough City Park is set aside for recreational purposes, the street used by plaintiff is open to the motoring public for purposes other than recreational use. The intent of the above cited statutes was to encourage landowners to allow the public to use their property for recreational purposes. The statutes specifically refer to use of the land for recreational purposes. However, where persons are allowed to use the property for

purposes not associated with recreational activities, the statutes should not apply. *Id.* at 73 (citation omitted).

 If we were to construe the Act to grant immunity against a public road user who is going to or returning from a recreational site, a conflict would occur with the Utah Governmental Immunity Act. Utah Code Ann. § 63–30–8. That section provides for the waiver of immunity by all governmental entities for injury caused by a defective, unsafe, or dangerous condition of any highway, road, or street. It is our duty to construe each act of the legislature so as to give it full force and effect. When a construction of an act will bring it into serious conflict with another act, our duty is to construe the acts to be in harmony and avoid conflicts. *Murray City v. Hall,* 663 P.2d 1314, 1318 (Utah 1983). When that is done in the instant case, the Limitation of Landowners Liability Act cannot be stretched to cover travelers driving on-highway vehicles on roads listed on the county road system, even though their intended destination may be a recreational site. The California Supreme Court in *Delta Farms Reclamation District No. 2028 v. Superior Court,* 33 Cal.3d 699, 660 P.2d 1168, 190 Cal.Rptr. 494 (1983), noted that applying California's recreational use statute so as to limit liability toward users of public streets for recreational purposes would bring the statute into conflict with California's Torts Claim Act and create an absurd result:

> Therefore, an improved but dangerously rutted street would expose a city to liability to a bicyclist who commutes to work, even though it was under "no duty" to keep the same street safe for the recreational rider right behind him. We doubt that there is a single city attorney in this state who would submit such an absurdity to a court of law.

33 Cal.3d at 707, 660 P.2d at 1173, 190 Cal.Rptr. at 499.

## IV. DECISIONS FROM OTHER STATES

The County relies on decisions from other jurisdictions for the proposition that a limitation-of-landowner-liability statute may protect a municipality from liability for injury caused by a defective roadway. In *Von Tagen v. United States,* 557 F.Supp. 256 (N.D.Cal.1983), the plaintiff was injured in an automobile accident allegedly resulting from the government's failure to erect a guardrail or warning sign at a dangerously sharp curve on a road in the Golden Gate National Recreation Area. The court held that the California "recreational use" immunity statute applied to immunize the United States from liability when a plaintiff is engaged in recreational use on federal property. *Id.* at 259. Similarly, in *Umpleby v. United States,* 806 F.2d 812 (8th Cir.1986), the plaintiff was injured in a one-car accident on a road owned by the Army Corps of Engineers. The road was an access road leading to a game management and recreation area in North Dakota. *Id.* at 813. The state's recreational use statute was held applicable to the federal government. Finally, in *McClain v. United States,* 445 F.Supp. 770 (D.Or.1978), an automobile accident occurred on federal land in Oregon, killing a person who was on the land for recreational purposes. Again, the state's recreational use statute was held to bar recovery for the death. These cases are distinguishable because in each of them, the accident occurred on a road on federal land. It does not appear that the roads could be used by the public for purposes other than recreation or that the federal government was without the power to close or restrict their use at any time. Also distinguishable is *Gaeta v. Seattle City Light,* 54 Wash.App. 603, 774 P.2d 1255, 1258 (1989), where the Washington recreational use statute was held to bar a suit by the plaintiff who was injured while operating his motorcycle on a roadway atop the Diablo Dam. The roadway was under the control of Seattle City Light pursuant to its license with the United States Government. The government required Seattle City Light to keep the roadway open so that recreational users could reach and utilize the reservoir and abutting lands. The court noted that the road was not a thoroughfare. *Id.* 774 P.2d at 1256–57.

## V. CONCLUSION

We need not and do not now determine what type of roads are protected by the immunity granted by the Act to public entities against suits by users of their roads. We only decide that the immunity was not intended by the legislature to extend to roads of the type in Butterfield Canyon. That road is on the county road system, is maintained by the County, and can be used for recreational or nonrecreational purposes, and Jerz was traveling in an on-highway vehicle. Nothing distinguishes this road from hundreds of miles of other public roads in this state except that it is not as improved and it receives only a low level of maintenance.

Because we hold that the Butterfield Canyon road is not covered by the Act, it is unnecessary for us to consider the County's other contention, that Jerz was a "recreational user" as defined in the statute.

The summary judgment in favor of Salt Lake County is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.