Henri De BARITAULT as parent and natural guardian of Marc Henri De Baritault, Plaintiff and Appellant,

v.

SALT LAKE CITY CORPORATION, Defendant and Appellee.

State of Utah, Intervenor.

No. 940293.

Supreme Court of Utah.

March 14, 1996.

Edward T. Wells, West Valley, for plaintiff.

Randall Edwards, Salt Lake City, for defendant.

Jan Graham, Att'y Gen., Debra J. Moore, Carol Clawson, Asst. Att'ys Gen., for intervenor.

HOWE, Justice:

Plaintiff Henri De Baritault, parent and natural guardian of Marc De Baritault, a minor, appeals from a grant of summary judgment in favor of defendant Salt Lake City Corporation. Plaintiff contends that the trial court erred in holding that the Utah Limitation of Landowner Liability–Public Recreation Act (the "Act"), Utah Code Ann. §§ 57–14–1 to –7, bars his son's recovery for injuries suffered at a city park.

Since this review involves a grant of summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993).

Laird Park is a city-owned park located in a residential neighborhood in Salt Lake City, Utah. Marc entered the park playground, and while using the toddler swing, he fell and injured his head on a cement ridge surrounding the play area. De Baritault charged the City with negligent design, construction, and maintenance of the playground, seeking to recover present and future medical expenses plus damages for pain, emotional distress, loss of enjoyment of life, general damages, and all attorney fees and court costs.

The City moved for summary judgment, arguing that because the child was a recreational user of public lands held open without charge to the general public, the City had no duty toward him under the Act. De Baritault responded that the Act did not apply because the purpose of the Act was "to encourage private landowners to open up their lands for public use." Although the Act was amended in 1987 to apply to both "public and private landowners," De Baritault maintained

that the Act did not apply to Laird Park since the City had not opened the park in reliance upon the Act. He also challenged the constitutionality of the Act under the open courts, equal protection, and due process provisions of the Utah Constitution.

The trial court granted summary judgment on the grounds that Marc was a nonpaying recreational user of Laird Park and that "[u]nder the terms of the Act, Salt Lake City Corporation owed no duty of care to [the child] ... to· keep Laird Park safe or give any warning of any dangerous condition thereon." The court also concluded that there was no evidence of deliberate, malicious, or willful conduct by the City, which would have resulted in liability under section 57–14–6 of the Act.

 Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins,* 855 P.2d at 235. "An issue of statutory interpretation is one of law, and this court is free to draw its own conclusions regarding it." *Jerz v. Salt Lake County,* 822 P.2d 770, 771 (Utah 1991) (citing *Berube v. Fashion Centre Ltd.,* 771 P.2d 1033, 1038 (Utah 1989)). In so doing, we accord no deference to the trial court's resolution of legal issues. *Higgins,* 855 P.2d at 235.

We first examine the applicability of the Limitation of Landowner Liability Act to city parks, beginning with the Act itself and its history. In 1965, the Council of State Governments drafted a model act limiting the duties and liability of certain landowners to recreational users. *Crawford v. Tilley,* 780 P.2d 1248, 1250 (Utah 1989) (citing Council of State Governments, *Public Recreation on Private Lands: Limitations on Liability,* 24 Suggested State Legislation 150 (1965) [hereinafter Council of State Governments]). As of 1988, forty-eight states had adopted recreational use statutes limiting landowner liability. A number of states, including Utah, adopted the model act virtually unchanged.[1]

---

1. As of 1986, the following states, in addition to Utah, had adopted the model act virtually verbatim: Arkansas, Delaware, Georgia, Hawaii, Ida-

ho, Illinois, Iowa, Kansas, Kentucky, Maryland, Minnesota, Nebraska, Oregon, Pennsylvania, and South Carolina. *Rivera v. Philadelphia Theologi-*

*Redinger v. Clapper's Tree Serv., Inc.,* 419 Pa.Super. 487, 615 A.2d 743, 745 (1992) (citing Betty van der Smissen, *Legal Liability & Risk Management for Public & Private Entities* 190 (Anderson Publishing Co.1990)), *appeal denied,* 533 Pa. 652, 624 A.2d 111 (1993).

■ The stated legislative purpose of the Act "is to encourage public and private owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for those purposes." Utah Code Ann. § 57–14–1. Because Utah enacted the model act almost verbatim, complete with the statement of purpose, "its preamble is relevant in construing the legislature's intent." *Crawford,* 780 P.2d at 1250.

> Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of private land could add to the outdoor recreation resources available. . . . [I]n those circumstances where private owners are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.

*Id.* (citing Council of State Governments at 150).

The definition section of the Act states in pertinent part:

> (1) "Land" means any land within the territorial limits of the state of Utah and includes roads, water, water courses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
>
> (2) "Owner" includes the possessor of any interest in the land, whether public or private land. . . .
>
> (3) "Recreational purpose" includes, but is not limited to, any of the following or any combination thereof: hunting, fishing, swimming, skiing, snowshoeing, camping, picnicking, hiking, studying nature, water-

skiing, engaging in water sports, using boats, using off-highway vehicles or recreational vehicles, and viewing or enjoying historical, archaeological, scenic, or scientific sites.

Utah Code Ann. § 57–14–2.

The Act further provides that in the absence of willful and malicious conduct by the owner or the charging of an admission fee, "an owner of land owes no duty of care to keep the premises safe for entry or use by any person using the premises for any recreational purpose, or to give any warning of a dangerous condition, use, structure, or activity on those premises to those persons." *Id.* § 57–14–3. Furthermore, an owner who invites or permits any person to use the land, without charge, for any recreational purpose does not

> (1) make any representation or extend any assurance that the premises are safe for any purpose;
>
> (2) confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed;
>
> (3) assume responsibility for or incur liability for any injury to persons or property caused by an act or omission of the person or any other person who enters upon the land. . . .

*Id.* § 57–14–4.

However, as one court aptly observed: "In spite of its conciseness and apparent simplicity, the [recreational use act] has managed to weave a tortured tapestry of decisional law in a multitude of jurisdictions. . . . At the heart of the dispute is the ascertainment of what nature of land is contemplated as being removed from liability under the Act." *Redinger,* 615 A.2d at 746. Although all of the relevant jurisdictions emphasize that natural, undeveloped, and unimproved areas are most often targeted for protection, interpretations vary widely. For example:

> Louisiana uses the term "type normally encountered in true outdoors," which does not include playground-slide in town park, a recreational area within a populated city adjacent to a much traveled lakeshore

*cal Seminary,* 510 Pa. 1, 507 A.2d 1, 8–9 n. 18

(1986).

drive, a civic center, or a wooded area in the city administered by the park district. In California the court held that the immunity was only for unaltered natural condition areas.... However, a 1985 Michigan Appeals case protected homeowners in their backyards. The Delaware court held that the statute did not apply to urban or residential areas improved with pools, tennis courts and the like; but the Ohio court included residential pools within the statute. However, Michigan extended application of Recreational Land Users Act to city property located in urban areas and then reversed itself in 1987.... A 1984 Louisiana case held that playground bleachers were within the statute, but a 1986 Connecticut case held to the contrary on football stadium bleachers.... Playgrounds have been held not within the statute; however a vacant lot used for informal recreation was held within the statute.

*Redinger,* 615 A.2d at 745–46 (quoting *Legal Liability & Risk Management, supra,* at 207–09).

The inconsistency of case law interpreting similar or identical statutes requires us to apply the principles of statutory construction to the plain language of the Act while giving proper deference to our own precedent. " 'The primary rule of statutory interpretation is to give effect to the intent of the legislature in light of the purposes the statute was meant to achieve.' " *Sullivan v. Scoular Grain Co.,* 853 P.2d 877, 880 (Utah 1993) (quoting *Reeves v. Gentile,* 813 P.2d 111, 115 (Utah 1991)). In addition, " 'if there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose.' " *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1045 (Utah 1991) (quoting *Osuala v. Aetna Life & Cas.,* 608 P.2d 242, 243 (Utah 1980)).

Since the application of the Act to city parks or improved urban areas is a case of first impression in Utah, we will examine its treatment in selected other jurisdictions. The Idaho courts have consistently employed a broad definition of "recreational user." In

*McGhee v. City of Glenns Ferry,* 111 Idaho 921, 729 P.2d 396 (1986), a child suffered injuries in a city park when the chain on a swing broke. Without considering the status of the park itself under the Idaho recreational use act, the court determined that the child was a recreational user. *Id.,* 729 P.2d at 397. Similarly, in *Jacobsen v. City of Rathdrum,* 115 Idaho 266, 766 P.2d 736, 743 (1988), the court disregarded the status of the land and imputed recreational intent to a two-year-old who wandered out of his front yard and fell into a ditch in the city park across the street from his home, nearly drowning and suffering severe brain damage. Justice Bistline, in an impassioned dissent from a holding that the recreational use statute barred recovery for the child's injuries, remarked, "How a child, as a member of the public whom the city *invites* to use a city park, can be considered a recreational *trespasser* is beyond the reasoning power of rational minds, mine included." *Id.,* 766 P.2d at 749 (Bistline, J., concurring and dissenting). The exclusively user-oriented Idaho analysis, as the *Jacobsen* dissent points out, produces the troubling result that little children, enticed into public parks by playground equipment designed especially for their enjoyment, suddenly become trespassers before the law to whom only a minimum duty of care is owed.

The New York and Pennsylvania courts, in contrast, have focused on the status of the land under recreational use statutes. The plaintiff in *Ferres v. City of New Rochelle,* 68 N.Y.2d 446, 502 N.E.2d 972, 974, 510 N.Y.S.2d 57, 59 (1986), was injured when he rode his bicycle into a chain stretched across a trail in a supervised suburban park which included a beach area, guardhouse, pavilions, and park area. The court performed a detailed analysis of the legislative history of the New York Recreational Use Act and concluded, "It would be contrary to reason to assume that the Legislature could have intended that the statute apply in circumstances where neither the basic purpose of the statute, nor, indeed, any purpose could be served...." *Id.,* 502 N.E.2d at 976, 510 N.Y.S.2d at 61. The court noted that the municipality was already holding the facility open to the public without the encourage-

ment of the statute. In addition, "when the [recreational use statute] is applied, for example, to a person hunting or fishing in open or wilderness areas pursuant to the owner's permission granted under the statute, there is a quid pro quo—permission to hunt or fish in return for the statutory immunity from liability." *Id.*, 502 N.E.2d at 977, 510 N.Y.S.2d at 62. In contrast, this quid pro quo is missing when a municipal park has already held itself open to the public. If the Act applied, the municipality would gain immunity without giving up anything. The court also reasoned that "this immunity would depend solely on a factor which bears no relationship to the risk of harm or the municipality's ability to prevent it, i.e. whether the activity for which the person entered the premises happened to be one of those mentioned in the statute." *Id.*, 502 N.E.2d at 977, 510 N.Y.S.2d at 62.

The Pennsylvania Supreme Court, in *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 507 A.2d 1, 9 (1986), held that the recreational use statute did not cover an indoor swimming pool operated by a seminary. The court stated that the "intention of the Legislature to limit the applicability of the Recreational Use Act to outdoor recreation on largely unimproved land is evident not only from the Act's stated purpose but also from the nature of the activities it listed as recreational purposes within the meaning of the statute." *Id.*, 507 A.2d at 8. Another Pennsylvania case, *Walsh v. City of Philadelphia*, 526 Pa. 227, 585 A.2d 445 (1991), examined the status of a municipally owned urban basketball court and concluded that the statute covers both private and public lands and an owner who allows free access to unimproved lands for recreational purposes is entitled to the protection of the statute. However, the court reasoned that "it would be totally unwarranted to deny plaintiff Walsh any recovery for those injuries which resulted from Philadelphia's negligent maintenance of the basketball and boccie courts." *Id.*, 585 A.2d at 451.

Although we have not previously considered the application of the Limitation of Landowner Liability Act to public parks, we have examined the status of land under the Act in the context of a private mountain cabin, *Crawford v. Tilley*, 780 P.2d 1248 (Utah 1989), and a minimally maintained county road, *Jerz v. Salt Lake County*, 822 P.2d 770 (Utah 1991). In both cases, we declined to extend the application of the Act beyond the limits expressed by its preamble and statement of purpose. In *Crawford*, we emphasized the Utah Code provision that "the statutes of this state are to be 'liberally construed with a view to effect the objects of the statute and to promote justice.'" 780 P.2d at 1251 (quoting Utah Code Ann. § 68–3–2). We found that to extend the application of the Act to a class of defendants not anticipated by the Act—landowners who actively discourage or preclude public access to their property—"would be to disregard the legislature's intent and to derogate the purpose of the statute." *Id.* at 1250. The same principle applies here. Extending the application of the Act to improved city parks which, unlike many private wilderness lands, were not opened to the public in response to the Act and which are already covered by other laws would serve neither the legislature's intent nor the purpose of the statute.

Holding otherwise would give rise to the problem of conflicting statutes which we addressed in *Jerz*. The defendant in that case sought to extend the application of the Act to an injury on a county road. However, we noted that the Governmental Immunity Act already waived immunity for injuries caused by dangerous or unsafe conditions on any public roadway, and we reasoned, "When a construction of an act will bring it into serious conflict with another act, our duty is to construe the acts to be in harmony and avoid conflicts." *Jerz*, 822 P.2d at 773 (citing *Murray City v. Hall*, 663 P.2d 1314, 1318 (Utah 1983)).

Similarly, section 63–30–9 of the Governmental Immunity Act already waives immunity for injuries sustained on public improvements. The Limitation of Liability Act, however, makes no mention of public improvements. Consequently, since the Governmental Immunity Act specifically addresses public improvements, it is the law most specific to Laird Park, and "[w]ell-established principles of statutory construction

require that a more specific statute governs instead of a more general statute." *Pan Energy v. Martin,* 813 P.2d 1142, 1145 (Utah 1991) (citations omitted).

In summary, in Utah and in other jurisdictions, the courts which have focused on the land itself have found some combination of the following characteristics prerequisite to immunity under the recreational use statutes: (1) rural, (2) undeveloped, (3) appropriate for the type of activities listed in the statute, (4) open to the general public without charge, and (5) a type of land that would have been opened in response to the statute. In contrast, Laird Park, though it is open to the public free of charge, is urban, improved land which is inappropriate for the listed activities and was opened long before the adoption of the Act. Moreover, few, if any, of the listed recreational activities— hunting, fishing, swimming, skiing, snowshoeing, camping, picnicking, hiking, studying nature, waterskiing, engaging in water sports, using boats, using off-highway vehicles or recreational vehicles, and viewing or enjoying historical, archeological, scenic, or scientific sites—can be conducted in a small city park. Therefore, we hold that the Utah Limitation of Liability Act does not apply to Laird Park or to similar improved urban or suburban municipal parks.

The record before us contains insufficient facts to show whether the design of the playground was defective or dangerous under the Governmental Immunity Act or whether the City was negligent. Since summary judgment was granted solely on the basis of the Limitation of Liability Act, we leave it to the trial court to examine the applicability of the Governmental Immunity Act, with all appropriate defenses, following full presentation of the evidence by the parties. As we stated in *Johnson v. Salt Lake City Corp.,* 629 P.2d 432, 434 (Utah 1981):

> In view of the fact that this case will now be remanded for further proceedings, we do deem it appropriate to stress that the holdings of this case [and here, *Crawford* and *Jerz*] do not establish municipalities as insurers against the consequences of all injuries associated with their operations. Far from it. All we hold is that the plaintiff's action is not barred by [here, the limitation of landowner liability act]. The defendant municipality remains fully qualified to assert appropriate defenses. . . .

Since we hold that the Act does not apply to Laird Park, it is unnecessary for us to consider whether Marc qualified as a recreational user under the Act. We do not reach plaintiff's constitutional challenges or the arguments of the intervenor in favor of constitutionality since the case can be decided on other grounds. *See West v. Thomson Newspapers,* 872 P.2d 999, 1004 (Utah 1994). Therefore, we vacate the trial court's grant of summary judgment in favor of the City and remand this case for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., STEWART, A.C.J., and DURHAM and RUSSON, JJ., concur in Justice HOWE's opinion.