**Robert and Kathleen SULZEN, Individually and on Behalf of Brandon James HOLTON, Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. 2:98–CV–60 C.**

United States District Court, D. Utah, Central Division.

June 30, 1999.

James R. Hasenyager, Ogden, UT, for plaintiff.

Daniel D. Price, Salt Lake City, UT, for defendant.

## ORDER

CAMPBELL, District Judge.

This matter is before the court on defendants' motion for summary judgment. The court conducted a hearing on this motion on June 10, 1999, at which plaintiff was represented by James Hasenyager, and defendants were represented by Rick Rose and Daniel Price. Having fully con-

sidered the arguments of counsel, the submissions of the parties and applicable legal authorities, the court now enters the following order.

## Background

While visiting the Hanging Rock Picnic Area in American Fork Canyon, the plaintiffs' daughter, Elizabeth Holton, was stuck and killed by a rock which was dislodged by two teenagers climbing on a cliff above. Plaintiffs sued the United States as owner of the picnic area for failure to keep the area safe and for failure to warn Elizabeth Holton of the dangerous conditions in the area.

## Discussion

The United States has moved for summary judgment based on the Utah Limitation of Landowner Liability Act. *See* Utah Code Ann. § 57–14–1 to –7 (Supp.1998). Plaintiffs argue that the Act does not apply to the Hanging Rock Picnic Area, or alternatively, that the United States is not entitled to the protection of the Act because the United States willfully disregarded a life threatening hazard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1552 (10th Cir.1997).

### A. Application of the Utah Limitation of Landowner Liability Act

■ The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity from tort actions arising from "personal injury or death caused by the negligent or wrongful act or omission of any [Federal] employee." 28 U.S.C. § 1346(b) (1993). Under the FTCA, however, the United States is only liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1994). In other words, "if a similarly situated private individual would not be liable under the appropriate jurisdiction's laws, then neither is the United States." *Woods v. United States*, 909 F.Supp. 437, 439 (W.D.La.1995).

■ Because the accident in this case occurred on federal property in Utah, the tort law of the state of Utah applies. *See Ewell v. United States*, 579 F.Supp. 1291, 1293 (D.Utah 1984). In Utah, the Utah Limitation of Landowner Liability Act ("the Act") limits the liability of landowners who have opened their lands to the public free of charge for recreational use. *See* Utah Code Ann. §§ 57–14–1 to –7 (Supp.1998). Specifically, a landowner who falls within the scope of the Act owes no duty of care to keep the premises safe or to warn of dangerous conditions. *See* Utah Code Ann. § 57–14–3 (Supp.1998). Because the FTCA waives sovereign immunity only to the extent that a private individual would be held liable under like circumstances, the Act "applies to immunize the federal government from liability for injuries sustained by a plaintiff engaged in recreational use of federal property." *Ewell*, 579 F.Supp. at 1295; *see also Maldonado v. United States*, 893 F.2d 267, 269 (10th Cir.1990) (holding that state recreational use statutes apply to United States).

The United States maintains that the Hanging Rock Picnic Area falls within the protection of the Act and it is therefore entitled to summary judgment as a matter of law. Plaintiff argues that the Act does not apply because the picnic area was the type of highly developed area that the Act intended to exclude.

In *De Baritault v. Salt Lake City Corp.*, 913 P.2d 743 (Utah 1996), the Utah Supreme Court held that the Act did not apply to a city-owned public park where a child was injured by a fall from a swing. To qualify for limited immunity under the Act, the court held that the land must have "some combination" of the following characteristics: "(1) rural, (2) undeveloped, (3) appropriate for the type of activities listed in the statute, (4) open to the general public without charge, and (5) a type of land that would have been opened in response to the statute." *Id.* at 748. Based on the absence of these characteristics, the court in *De Baritault* held that the Act did "not apply to Laird Park or to similar improved urban or suburban municipal parks." *Id.* at 748.

After applying each of these factors to the undisputed facts in this case, the court finds that the Hanging Rock Picnic Area qualifies for limited immunity under the Act because it exhibits most, if not all, of these characteristics.

### 1. *Rural*

The Hanging Rock Picnic Area is the type of rural recreation area intended to be covered by the Act. In Utah and other jurisdictions, courts consider the rural nature of the land in determining whether the state's limitation on landowner liability act should apply. *See De Baritault*, 913 P.2d at 748. To decide if the land is rural, courts look to various characteristics including the remoteness, size and naturalness of the area. *See Keelen v. State Dept. of Culture Recreation & Tourism*, 463 So.2d 1287, 1290 (La.1985). Each of these factors support the conclusion that the Hanging Rock Picnic Area is a rural area.

First, the Hanging Rock Picnic Area is a remote area, removed from urban or residential settings. Courts agree that the Act was intended to grant immunity from liability to owners of rural and semi-rural tracts of land, not to owners of land in residential and populated neighborhoods.

*See, e.g., Harrison v. Middlesex Water Co.*, 80 N.J. 391, 403 A.2d 910, 914–15 (1979). Accordingly, courts have uniformly denied protection to owners of recreational land in residential or urban settings. *See De Baritault*, 913 P.2d at 747 (holding that Act does not apply to city park in residential area within Salt Lake City limits); *see also Wymer v. Holmes*, 429 Mich. 66, 412 N.W.2d 213, 219 (1987) (holding that Act does not apply to backyard pond or man-made lake in subdivision); *Harrison*, 403 A.2d at 915 (N.J.1979) (holding that Act does not apply to lake in populated residential neighborhood); *Walsh v. City of Philadelphia*, 526 Pa. 227, 585 A.2d 445, 450 (1991) (holding that Act does not apply to inner-city playground).

However, the Hanging Rock Picnic Area is readily distinguishable from the urban or residential areas that other courts have excluded from the protection of the Act. The picnic area, which is located four miles from the mouth of American Fork Canyon in the Uintah National Forest, is certainly not a "stones throw" from a populated residential area. *See Holder v. Louisiana Parks Service*, 493 So.2d 275, 277–78 (La. Ct.App.1986) (noting that "property used as a recreational area within a populated city, adjacent to a much traveled roadway, and within a stone's throw of an exclusive residential area" would be outside scope of Louisiana's act). Instead, the Hanging Rock Picnic Area is the type of relatively remote area intended to be covered by the Act.

Second, the Hanging Rock Picnic Area is a part of the Uintah National Forest, a massive expanse of rugged land. Although the grassy picnic area itself is only approximately 200 feet wide by 300 feet long, the grassy area is not a separate and discrete area apart from the rest of the Uintah National Forest. The parties agree that there is no division between the picnic area and the American Fork River, the overhanging cliffs, or the other undeveloped areas of the Uintah National Forest. In fact, Ms. Holton was killed when

two teenage boys, who had been visiting the picnic area, dislodged a rock while climbing on the nearby 200 foot cliff. Looking only to the grassy picnic area to determine the size of the land would be an artificial distinction, especially where the accident was caused by activity in an unaltered and natural area of the forest. When viewed in conjunction with the surrounding Uintah National Forest, the Hanging Rock Picnic Area is part of "a large tract of open, vacant land in a relatively natural state" within the scope of the Act. *See Wymer v. Holmes*, 412 N.W.2d at 219.

Third, the Hanging Rock Picnic Area is a relatively natural setting in which visitors encounter elements found in the "true outdoors," such as cliffs, heavily wooded areas, and rivers. In determining whether the property should be considered rural, some courts have considered whether the "injury-causing element" is normally found in the "true outdoors." *Holder*, 493 So.2d at 278. In this case, falling rock from an overhead cliff is unquestionably the type of danger only encountered in the true outdoors; such a danger would never be "found in someone's backyard." *Id.* The natural surroundings of the Hanging Rock Picnic Area support the conclusion that the area is the type of rural location intended to be covered the Act.

### 2. *Undeveloped*

The Hanging Rock Picnic Area is a relatively natural, undeveloped area of land within the protection of the Act. Plaintiff argues that the picnic area was a developed area because it had public restrooms, a paved parking area, and intentionally planted sod and because the course of the American Fork River had been altered to accommodate the picnic area. Other courts have held, however, that "[i]mprovements such as shelters, toilet facilities, fireplaces, etc., are merely conveniences incidental to the use of the land for enumerated recreational activities and do not themselves take property out of a rural undeveloped classification." *Keelen*, 463 So.2d at 1290; *see also Guttridge v. United States*, 927 F.2d 730, 733 (2nd Cir.1991) (holding that the fact that "the property was developed in some respects and that some structural amenities had been added does not in itself remove the property from the purview of [the Act]"); *Woods v. United States*, 909 F.Supp. 437, (W.D.La. 1995); *aff'd*, 84 F.3d 532 (2nd Cir.1996) (holding that anchoring buoy lines around swimming area and installing restrooms does not remove area from rural classification). The improvements to the Hanging Rock Picnic Area merely made the area more accessible and enjoyable to the public and did not significantly alter the land's natural state.

The plain language of the Act evinces the legislature's intent to protect owners of relatively undeveloped land regardless of whether the land contains improvements, such as a parking lot or restrooms. The Act expressly includes roads, buildings, and structures within the definition of "land" covered by the Act. *See* Utah Code Ann. § 57–14–2(1) (Supp.1998); *see also Keelen*, 463 So.2d at 1290. If the legislature intended to exclude all improved land from the scope of the Act, the Act would not expressly cover these artificial conditions.

Although "[h]uman alterations or additions to the land may so change its character as to render the Act inapplicable," the focus should be on whether the land " 'remains in a relatively natural state or has been developed and changed in a manner incompatible with the intention of the act.' " *Kruse v. Iron Range Snowmobile Club*, 890 F.Supp. 681, 685 (W.D.Mich. 1995) (citations omitted) (holding that bridge that made area more accessible to snowmobiling did not change relatively natural state of surrounding lands). Here, the Hanging Rock Picnic Area contains some improvements, but is not developed to the point that it is removed from the type of land covered by the Act.

### 3. Appropriate for the Type of Activities Listed in the Statute

Application of the Act is limited to owners who have opened their property to the public for recreational purposes. The Act then provides:

Recreational purpose includes, but is not limited to, *any of the following or any combination thereof:* hunting, fishing, swimming, skiing, snowshoeing, camping, picnicking, hiking, studying nature, waterskiing, engaging in water sports, using boats, using off-highway vehicles or recreational vehicles, and viewing or enjoying historical archeological, scenic, or scientific sites.

Utah Code Ann. § 57–14–2(3) (Supp.1998) (emphasis added).

The undisputed facts show that the Hanging Rock Picnic Area is appropriate for many of the activities listed in the statute. The picnic area can be used for fishing, swimming (or at least wading), hiking, picnicking, studying nature or enjoying archeological or scenic sites, most of which cannot be conducted in a small city park like the park at issue in *De Baritault.* In addition, there is no requirement in the Act that the area be conducive to all of the enumerated activities. Therefore, this factor weighs in favor of finding Hanging Rock Picnic Area within the scope of the Act.

### 4. Open to the General Public Without Charge

It is undisputed that the picnic area was open to the public free of charge.

### 5. A Type of Land that Would Have Been Opened in Response to the Statute

■ The Act was intended to encourage land owners to permit gratuitous recreational use of their land. *See* Utah Code Ann. § 57–14–1 (Supp.1998). This policy of "encouraging landowners to open land for recreational use applies equally to the federal government as to other land-

owners." *Ewell,* 579 F.Supp. at 1294. Therefore, federal lands opened to the public are the types of land that would have been opened in response to the statute. *See id.* at 1294–95. It is immaterial that the Hanging Rock Picnic Area was open to the public ten years before the passage of the Act, because the land need not actually be opened in response to the Act, so long as it is the *"type of land* that would have been opened in response to the statute." *De Baritault,* 913 P.2d at 748 (emphasis added).

Because the Hanging Rock Picnic Area exhibits at least "some combination" of the "characteristics prerequisite to immunity under the recreational use statutes," the government is immune from liability for Ms. Holton's death unless plaintiffs can fall within one of the exceptions in Utah Code Ann. § 57–14–3. *Id.* at 748.

### B. Willful or Malicious Conduct Exception

The Act provides that "an owner of land owes no duty of care to keep the premises safe for entry or use by any person entering or using the premises for any recreational purpose or to give any warning of a dangerous condition, use, structure, or activity on those premises to those persons." Utah Code Ann. § 57–14–3 (Supp.1998). However, the Act does not limit liability where the owner charges for use of the land, where the injury is deliberate, willful or malicious, or where the injury results from "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." Utah Code Ann. § 57–14–6(1) (Supp.1998).

■ Plaintiffs argue that the "willful or malicious failure to guard or warn" exception applies in this case because the United States knew of the falling rock hazard at Hanging Rock Picnic Area and failed to take any action despite such knowledge.

■ The Utah Supreme Court has adopted the following "tripartite standard" for establishing willful or malicious con-

duct. A finding of willful or malicious conduct requires: "(1) knowledge of a dangerous condition, (2) knowledge that serious injury is a probable result of contact with the condition, and (3) inaction in the face of such knowledge." *Loosli v. Kennecott Copper Corp.*, 849 P.2d 624, 627 (Utah Ct.App.1993) (citing *Golding v. Ashley Cent. Irrigation Co.*, 793 P.2d 897, 900 (Utah 1990)).

As evidence that the United States had knowledge of a dangerous condition likely to result in serious injury, plaintiffs rely primarily on the deposition testimony of Robert Eastman, a park ranger. Mr. Eastman testified that before the accident he had observed shale rocks along the river, around the toilet area, and in the parking lot. (Eastman Depo. at 6–7.) He also testified that maintenance people had reported finding rocks in the grassy picnic area which would cause indentations in the grass. (Eastman Depo. at 8 & 10.) However, Mr. Eastman stated that he never believed that the rocks were falling from the cliff above. (Eastman Depo. at 6.) Although the willful and malicious exception requires actual knowledge of a dangerous condition, the question of whether Mr. Eastman knew that the rocks were falling from the overhanging cliff requires a credibility determination, a determination not appropriate at the summary judgment stage. Mr. Eastman's knowledge before the accident that shale rocks had left indentations in the grass could support a conclusion that Mr. Eastman knew that rocks were falling from the cliff onto the picnic area and failed to act.

In addition to Mr. Eastman's testimony, plaintiffs point to a Forest Service memoranda and the deposition testimony of Forest Supervisor Peter Karp as evidence that the United States was aware that rocks had been falling from the cliff before the accident. The Forest Service memoranda dated September 7, 1995, indicates that the task force on the Hanging Rock Picnic Area, organized in response to Elizabeth Holton's accident, was concerned "that unrecorded near misses have occurred at Hanging Rock." (Pl.'s Ex. D.) Mr. Karp

also stated in his deposition that he was aware that rocks had fallen from the cliff from time to time before the accident. (Karp Depo. at 20–21.) However, it is not clear whether the members of the task force or Mr. Karp learned of the history of falling rocks before or after the accident. The ambiguity in the Forest Service memoranda and the Karp deposition regarding the time that Forest Service officials learned of the falling rocks raises a question for the trier of fact. Viewing the evidence in the light most favorable to the non-moving party, the fact finder could infer that the Forest Service knew of the falling rocks before Elizabeth Holton's accident.

Because plaintiffs have raised a question of fact as to whether the United States had knowledge of a dangerous condition that was likely to result in serious injury, defendants' motion for summary judgment must be denied. The question of whether the wilful or malicious exception applies will be decided at trial.

### Order

For the foregoing reasons, defendants' motion for summary judgment is DENIED.

SO ORDERED.