2008 UT App 221

**THOMAS EDISON CHARTER SCHOOL, Petitioner,**

v.

**RETIREMENT BOARD, Respondent.**

**No. 20061159–CA.**

Court of Appeals of Utah.

June 5, 2008.

---

Marty E. Moore, Logan, for Petitioner.

David B. Hansen and Liza J. Eves, Salt Lake City, for Respondent.

Before THORNE, Associate P.J., BENCH and McHUGH, JJ.

## OPINION

THORNE, Associate Presiding Judge:

¶1 Petitioner Thomas Edison Charter School (TECS) seeks review of the Utah State Retirement Board's (the Retirement Board)[1] order denying TECS's request for board action essentially seeking to be retroactively excluded from the Utah Retirement System (the URS) and for a refund of funds previously paid. We affirm.

## BACKGROUND

¶2 TECS is a state-sponsored charter school that receives public funds and is engaged in educational activities. In 2002, before receiving its charter and opening the school, the TECS Governing Board held a meeting where it considered offering retirement benefits. At a subsequent meeting, it voted to set up a 401K retirement plan for its employees. The Utah State Office of Education (the USOE), TECS's statutory sponsor at that time, advised the TECS Governing Board that charter schools choosing to offer retirement benefits to their employees were legally required to participate in the URS. In the summer of 2003, the TECS Governing Board met with the URS field services representative who told them that TECS was legally required to join the URS if it offered any retirement benefits to its employees.

¶3 On September 9, 2003, based on direction from the URS and the USOE, the TECS Governing Board voted to join the URS, reasoning that TECS "cannot opt out of the URS." On November 5, 2003, TECS voluntarily filed an Employer Application for the Public Employees' Noncontributory Retirement System with an effective date of August 1, 2002. TECS included a letter of intention with its application asking for retro-

active benefits for its employees back to the beginning of the 2002–2003 school year. On December 11, 2003, the Retirement Board approved TECS for membership in the URS.

¶4 In its 2004 general session, the Utah Legislature enacted House Bill 108, which was signed into law on March 23, 2004, effectively amending Utah Code sections 49–13–202 and 53A–1a–512 to make charter school participation in the URS voluntary instead of mandatory. In September 2004, the TECS Governing Board voted to opt out of the URS pursuant to the new amendments. In December 2004, TECS submitted its Declaration of Participation or Intent for a Charter School informing the URS that it had decided to opt out of the URS, specifically stating that it had made "an irrevocable election of nonparticipation as an employer for retirement programs with [the URS] under Title 49," effective July 1, 2004. TECS also submitted a letter to the executive director of the URS requesting to be retroactively excluded from the URS and for a refund of retirement contributions previously paid. On December 14, 2004, the executive director denied TECS's requests for retroactivity. Thereafter, TECS submitted a Request for Board Action to the Retirement Board seeking administrative relief pertaining to its request for retroactive exclusion from the URS.[2]

¶5 On October 3, 2006, the Retirement Board's Adjudicative Hearing Officer (the hearing officer) held a hearing on TECS's request for board action. TECS argued that Utah Code section 49–13–202's requirement of mandatory participation in the URS conflicted with section 53A–1a–512's direction that charter schools have exclusive authority to determine retirement benefits for its employees, and therefore section 53A–1a–512 prevails in the conflict because it is the more specific and most recent provision. TECS also argued that the legislative changes in House Bill 108 resulted in clarifying amend-

---

1. The Retirement Board is a statutorily created entity that administers the retirement plans and programs for all public employers eligible under the Utah State Retirement and Insurance Benefit Act (the Retirement Act). *See* Utah Code Ann. § 49–11–202 (2007).

2. We note that TECS's request for board action does not include a request for release from URS participation. Thus, it appears that TECS has been released from URS participation and participation in the URS is not an issue on appeal.

ments that (1) resolve the conflict between the two statutes and (2) demonstrate that the legislature originally intended that charter school participation in the URS was to be voluntary.

¶ 6 The hearing officer considered TECS's statutory interpretation argument and interpreted the statutes concluding that Utah Code section 49–13–202 did not conflict with section 53A–1a–512. The hearing officer considered House Bill 108's effect upon sections 49–13–202 and 53A–1a–512, and concluded that House Bill 108 was not merely a clarifying amendment but an amendment meant to change the existing law, which required mandatory charter school participation, into voluntary participation in the URS. As a result, the hearing officer determined that TECS was required to participate in the URS when it joined effective August 1, 2002, until it opted out effective June 30, 2004. Accordingly, the hearing officer denied TECS's request for board action and ordered it to pay the URS delinquent contributions, including interest and penalties for failure to pay timely contributions for the time period from August 2002 to June 2004.

¶ 7 On December 14, 2006, the Retirement Board adopted the hearing officer's Findings of Fact, Conclusion of Law, and Order of Denial. TECS filed this petition for review in this court.

## ISSUES AND STANDARD OF REVIEW

 ¶ 8 TECS challenges the Retirement Board's authority to interpret the Utah Charter Schools Act (the Charter Schools Act),[3] see Utah Code Ann. §§ 53A–1a–501 to –518 (2006 & Supp.2007), and asserts that the Retirement Board erred in its interpretation of various statutes under the Charter

Schools Act and the Utah State Retirement and Insurance Benefit Act (the Retirement Act), see Utah Code Ann. §§ 49–11–101 to –1001 (2007). TECS also asserts that the Retirement Board erred when it concluded that House Bill 108 did not merely clarify existing law but actually changed the law making charter school participation in the URS voluntary instead of mandatory. "Absent a grant of discretion, we review the [Retirement] Board's application or interpretation of a statute as a question of law under the correction-of-error standard." *Sindt v. Retirement Bd.*, 2007 UT 16, ¶ 5, 157 P.3d 797.[4]

## ANALYSIS

¶ 9 TECS asserts that, when it decided to offer retirement benefits to its employees in 2003, Utah law did not actually require charter schools to participate in the URS. TECS presents two arguments in support of this assertion. First, TECS argues that, although the version of Utah Code section 49–13–202 in effect in 2003 appears to have required charter school participation in the URS, see Utah Code Ann. § 49–13–202 (Supp.2003) (amended 2004), TECS's participation was not required because section 53A–1a–512 provided charter schools with the exclusive authority to make decisions regarding employee benefits including retirement plans, see Utah Code Ann. § 53A–1a–512 (2000) (amended 2004). TECS maintains that an apparent irreconcilable conflict between the two statutes exists and the Retirement Board erred in its statutory interpretation of these statutes. Second, TECS argues that the 2004 amendments to sections 49–13–202 and 53A–1a–512 provide further support for the proposition that charter school partic-

---

**3.** TECS asserts that the Retirement Board does not have the authority to interpret the Charter Schools Act, and therefore this court should review the legal issues under the correction-of-error standard, which does not give deference to the final order. Because we determine that the correction-of-error standard is already the appropriate standard of review, we need not, and therefore do not, address whether the Retirement Board has authority to interpret said act.

**4.** We note that the Retirement Board is entitled to deference when it " 'provides written docu-

mentation which demonstrates that the interpretation or definition promotes uniformity in the administration of the systems or maintains the actuarial soundness of the systems, plans or programs.' " *Sindt v. Retirement Bd.*, 2007 UT 16, ¶ 5, 157 P.3d 797 (quoting Utah Code Ann. § 49–11–203(1)(k) (2002)). In this case, the Retirement Board does not assert or provide any documentation that its statutory interpretation promotes uniformity or actuarial soundness. Therefore, the Retirement Board's decision is not entitled to deference.

ipation in the URS was voluntary in 2003. Based on their reading of the statutes, TECS argues that the Retirement Board erred in its interpretation of the bill. We address each argument in turn.

### I. Interpretation of Applicable Statutory Law

■ ¶ 10 TECS argues that the requirement of former Utah Code section 49–13–202 that charter schools offering retirement benefits must participate in the URS, *see* Utah Code Ann. §§ 49–13–201 (2002), –202 (Supp. 2003) (amended 2004), irreconcilably conflicts with the exclusive authority granted to charter schools in section 53A–1a–512 to make decisions regarding employee benefits including retirement plans, *see id.* § 53A–1a–512 (2000) (amended 2004). Former section 53A–1a–512 of the Charter Schools Act provided, in pertinent part, that "(1) A charter school shall select its own employees[, and] (2)[t]he school's governing body shall determine the level of compensation and all terms and conditions of employment, except as otherwise provided in this part." *Id.* Whereas former section 49–13–202 of the Retirement Act, provides, in pertinent part, as follows:

(1)(a) Unless excluded under [s]ubsection (2), an employer is a participating employer and may not withdraw from participation in this system.

(b) In addition to their participation in this system, participating employers may provide or participate in any additional public or private retirement, supplemental or defined contribution plan, either directly or indirectly, for their employees.

(2) An employer not initially admitted or included as a participating employer in this system prior to January 1, 1982, may be excluded from participation in this system if: (a) the employer elects not to provide or participate in any type of private or public retirement, supplemental or defined contribution plan, either directly or indi-

rectly, for its employees, except for Social Security....

*Id.* § 49–13–202 (Supp.2003) (amended 2004).

■ ¶ 11 TECS's claim that former Utah Code section 49–13–202 irreconcilably conflicts with former section 53A–1a–512 presents a question of statutory construction. "Pursuant to our rules of statutory construction, we look first to the statute's plain language to determine its meaning. We read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Board of Educ. v. Sandy City Corp.*, 2004 UT 37, ¶ 9, 94 P.3d 234 (citations and internal quotation marks omitted). "It is [the appellate court's] duty to construe each act of the legislature so as to give it full force and effect. When a construction of an act will bring it into serious conflict with another act, our duty is to construe the acts to be in harmony and avoid conflicts." *Jerz v. Salt Lake County*, 822 P.2d 770, 773 (Utah 1991).

¶ 12 By its plain language, former section 49–13–202's requirement that a charter school offering retirement benefits participate in the URS does not necessarily conflict with the charter school's authority under former section 53A–1a–512 to "determine the level of compensation and all terms and conditions of employment." Utah Code Ann. § 53A–1a–512(2) (2000). Rather, reading those statutes in harmony with one another, section 49–13–202 was consistent with section 53A–1a–512(2) in that it provided charter schools with the discretion to decide whether to offer retirement benefits to its employees [5] and to determine the type of retirement benefits to be offered to its employees.[6] Former section 49–13–202 contained no language requiring charter schools to offer retirement benefits to its employees, nor did it limit charter schools to offering only benefits available through the URS. *See* Utah Code Ann. § 49–13–202 (Supp.2003) (amended 2004). Thus, TECS was still able to decide

---

5. "An employer ... may be excluded from participation in this system if (a) the employer elects not to provide or participate in any type of public or private retirement, supplemental or defined contribution plan...." Utah Code Ann. § 49–13–202(2) (Supp.2003) (amended 2004).

6. "In addition to their participation in [the URS], participating employers *may* provide or *participate in additional public or private retirement, supplemental or defined contribution plan*...." *Id.* § 49–13–202(1)(b) (emphasis added).

whether or not to offer retirement benefits and only if it chose to offer such benefits would it be required to join the URS. Nonetheless, TECS would still be able to determine the level of retirement benefits to be offered. Based on this reading of the statutes, we conclude that former section 49–13–202 did not prevent a charter school from exercising its exclusive authority to determine the level of compensation and all terms and conditions of employment including whether to offer retirement benefits. As a result, there is no conflict between the two provisions. Because we conclude that no conflict exists, we do not consider TECS's arguments relative to the proper resolution of statutory conflicts.

## II. Interpretation of Recent Legislative Enactment

¶ 13 TECS next argues that the statutory changes of House Bill 108, effective July 1, 2004, clarified that charter school participation in the URS has always been voluntary, and that the Retirement Board erred in determining that the amendments to the relevant statutory sections changed charter school participation in the URS to voluntary participation instead of mandatory. Specifically, TECS argues that the opt-out procedure outlined in the current section 53A–1a–512, *see* Utah Code Ann. § 53A–1a–512 (2006), as enacted by House Bill 108, simply clarified that the legislature had always intended charter school participation in the URS to be voluntary, despite the language in former section 49–13–202, when it created a clearly defined procedure for charter schools to decline URS participation.

¶ 14 We do not agree. Rather, we conclude that charter school participation in the URS was mandatory in 2003 if charter schools elected to offer employee retirement benefits, and that House Bill 108, when it amended sections 49–13–202 and 53A–1a–512, changed the law to prospectively make charter school participation in the URS voluntary instead of mandatory.

### A. Utah Law Prior to Enactment of House Bill 108

¶ 15 Prior to the enactment of House Bill 108, section 49–13–202(3) required charter schools that chose to offer retirement benefits to participate in the URS. *See* Utah Code Ann. § 49–13–202(3) (Supp.2003). This requirement is expressed by the statute's mandatory language: "If an employer elects at any time to provide or participate in any type of public or private retirement, ... the employer *shall* be a participating employer in this system." *Id.* (emphasis added).

¶ 16 In 2003, exemptions from this requirement were only permitted for "the employer [that] elects not to provide ... retirement ... [benefits], for their employees," *id.* § 49–13–202(2)(a), as well as in certain collective bargaining situations not present in this case, *see id.* § 49–13–202(2)(b). There was no mention of specific exclusion for charter schools as is included in the amended statute. *See id.* § 49–13–202(3) (2007) ("An employer that is a *charter school* ... that makes an election of non-participation *in accordance with [s]ection 53A–1a–512* shall be excluded as a participating employer." (emphasis added)). Based on the mandatory language in former section 49–13–202, as harmonized with former section 53A–1a–512, we conclude that charter schools electing to offer retirement benefits to its employees in 2003 were required to participate in the URS.

### B. Utah Law After Enactment of House Bill 108

¶ 17 In contrast, the language in section 49–13–202, as amended by House Bill 108, specifically articulates a change in Utah law from mandatory to voluntary participation in the URS. *See* Utah Code Ann. § 49–13–202(3) (2007). Amended section 49–13–202(3) permits a charter school to opt out of participation in the URS, regardless of whether or not the charter school elects to offer retirement benefits, by expanding upon the previous restricting language stating that an "employer ... may be excluded from participation in [URS] if the employer elects not to provide ... any type of private or public retirement ... for its employees," *see id.* § 49–13–202 (Supp.2003) (amended 2004), to add that "[a]n employer that is a charter school ... *that makes an election of non-participation in accordance with [s]ection*

*53A–1a–512* shall be excluded as a participating employer," *see id.* § 49–13–202(3) (2007) (emphasis added).

¶ 18 The charter school exclusion addressed in amended sections 49–13–202(3) and 53A–1a–512 allows charter schools that properly opt out pursuant to section 53A–1a–512(8)(a)–(b) to offer employee benefit plans under either the URS or under any other program. *See* Utah Code Ann. § 53A–1a–512(8)(d) (2004) ("[A] charter school may offer employee benefit plans for its employees: (i) under Title 49, Chapter 20, Public Employees' Benefit and Insurance Program Act; or (ii) under any other program."). The amended sections 49–13–202 and 53A–1a–512 do not, unlike former section 49–13–202(2), limit a charter school's ability to exclude themselves from participation in the URS only by electing not to provide any retirement benefits to its employees. Therefore, we conclude that House Bill 108 amounted to a change in the law. As a result, we affirm the Retirement Board's order determining that TECS was required to participate in the URS at the time it initially joined in 2003.

## CONCLUSION

¶ 19 Based on the plain language of the statutes, in effect in 2003, we conclude that former section 49–13–202 did not conflict with section 53A–1a–512 and did not prevent a charter school from exercising its statutorily exclusive authority under previous section 53A–1a–512 to determine the level of compensation and all terms and conditions of employment, including whether or not to offer retirement benefits. As a result, we affirm the Retirement Board's determination that the Utah Retirement Act required TECS's participation in the URS when it chose to offer retirement benefits to its employees.

¶ 20 TECS voluntarily joined the URS and was thus required to make payments on behalf of its employees until the enactment of House Bill 108, which changed the law. After the passage of House Bill 108, charter schools' participation in the URS became voluntary. TECS chose to participate (in compliance with the law) and was therefore obligated to make payments during the period of its participation. TECS's decision to withdraw from the URS terminated an on-going obligation for payments, but did not retroactively relieve TECS from responsibility for payments previously due. Accordingly, we affirm the Retirement Board's order denying TECS's request for board action and ordering it to pay delinquent contributions to the URS, including interest and penalties for failure to pay timely contributions.

¶ 21 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, RUSSELL W. BENCH, and CAROLYN B. McHUGH, Judges.